**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

DISABILITY RIGHTS FLORIDA, INC.,
on Behalf of its Clients and Constituents,

     Plaintiff,

                               Civil Action No. 14-23323-Civ-SCOLA
vs.                           Consolidated Action Case No. 14-24140-Civ-
                               SCOLA

JULIE JONES,
Secretary, Florida Department of Corrections,
in her Official Capacity;
WEXFORD HEALTH SOURCES, INC.; and
FLORIDA DEPARTMENT OF CORRECTIONS,
an Agency of the State of Florida,

     Defendants.
_____/

## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Introduction

       This action for injunctive and declaratory relief is brought by Disability Rights Florida, an

organization empowered and charged by Federal law to protect the rights of mentally ill

individuals in Florida, including persons with mental illness confined by the State of Florida at

Dade Correctional Institution (Dade CI).  Disability Rights Florida has standing to bring this

action on behalf of its numerous clients and constituents confined in the inpatient mental health

unit at Dade CI who are or may be affected by Defendants' unlawful actions and inactions at

Dade CI.  The Defendants, by their actions or inactions, have permitted people with mental

illness who were and currently are housed in the inpatient mental health unit at Dade CI to be

subjected to abuse and discrimination by correctional officers to such an extent that at least two

persons with mental illness have died within the last two years and numerous others have been harmed.

## Jurisdiction

1.   This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States, as well as being brought pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 and the Federal Rehabilitation Act, 20 U.S.C. § 794.

2.   This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.  Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

3.   The venue lies in this district pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this claim occurred in this district.

## Parties

4.   Disability Rights Florida is the Protection and Advocacy System ("P&A") mandated under federal law to "ensure that rights of individuals with mental illness are protected." 42 U.S.C. § 10801(b)(1).  A P&A is tasked under law to protect and advocate for the rights of such individuals to ensure the enforcement of the Constitution and Federal and State statutes.  *Id.* at (b)(2)(A).  Among other things, Florida's P&A has the authority to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State."  42 U.S.C. § 10805(a)(1)(B); *see also Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999).

5.   Defendant, Julie Jones, is the Secretary of the Florida Department of Corrections (FDOC).[1]  Defendant Jones (Secretary) is sued in her official capacity for the purpose of

---

[1] Julie Jones is substituted for Defendant Michael D. Crews who resigned as Secretary of the FDOC on  November 24, 2014 .  Jones was appointed Secretary of the FDOC on January 5, 2015.  This action was initially brought against

obtaining injunctive relief.  Defendant Secretary has the statutory authority to implement the relief sought in this Complaint.  *See* § 20.0553(b), Fla. Stat. (2014).

6.  Defendant Wexford Health Sources, Inc. (Wexford) is a private corporation under contract since December 2012 with the FDOC to provide care, including mental health care, to inmates housed at some of the state prisons in South Florida including Dade CI. Wexford's contract with FDOC requires the provision of inpatient mental health care services to inmates housed in the inpatient mental health unit at Dade CI.

7.  Defendant FDOC is an agency of the State of Florida and administers and operates the Florida prison system, including Dade CI.  Defendant FDOC receives federal financial assistance and is covered by the Rehabilitation Act.  Defendant FDOC is a public entity within the meaning of Title II of the ADA.

8.  At all times the Defendants have acted under color of state law.

## Factual Allegations

### Disability Rights Florida

9.  The Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801, *et seq.,* provides for the establishment and funding of systems within each state which are designed to protect and advocate the rights of individuals with mental illness, as well as to investigate incidents of abuse and neglect of those with mental illness.

10. Federal funding is to be given to independent agencies or organizations which have the capacity to protect and advocate the rights of individuals with mental illness.  42 U.S.C. §§ 10804, 10805.

---

Defendant Crews in his official capacity and Defendant Jones, in her official capacity as Secretary of the FDOC, should be automatically substituted as a party.  Fed R. Civ. P. 25 (d).

11.     The system established by each State to protect and advocate the rights of mentally ill individuals must have the authority to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State." 42 U.S.C. § 10805(a)(1)(B).

12.     Pursuant to Florida law, Disability Rights Florida has been designated as the P&A under both the Protection and Advocacy for Individuals with Mental Illness Act and the Developmental Disabilities Assistance and Bill of Rights Act.

13.     As part of the authority and responsibility under the Protection and Advocacy for Individuals with Mental Illness Act, Disability Rights Florida has established an advisory council.  That advisory council provides advice on policies and priorities with regards to individuals with mental illness.  42 U.S.C. § 10805(a)(6)(A).

14.     Disability Rights Florida also provides the public with the opportunity to comment on its priorities with an annual survey.  42 U.S.C. § 10805(a)(8).

15.     Disability Rights Florida has established a grievance procedure for clients and prospective clients to assure that people with mental illness receive full access to protection and advocacy services.  42 U.S.C. § 10805(a)(9).

16.     One of the primary legal responsibilities of the P&A is to investigate allegations of abuse and neglect involving individuals with mental illness and to advocate for appropriate treatment and programs for such individuals.  The legal role of the P&A is to ensure that the legal and civil rights of individuals with mental illness are protected; that the individuals are treated with dignity and respect; and that the individuals receive appropriate services to address their needs.

17.  Disability Rights Florida brings this action on behalf of inmates within the FDOC who are currently clients and constituents of the P&A and who are mentally ill and confined in the inpatient mental health unit at Dade CI or who may be transferred to the inpatient mental health unit at Dade CI.

18.  The inmates confined within the FDOC at Dade CI, all of whom are clients and constituents of Disability Rights Florida in this action, are confined to "facilities" rendering care and treatment for the mentally ill as that term is defined in 42 U.S.C. § 10802(3).

### Facts Concerning Dade CI Inpatient Mental Health Units

19.  The FDOC by rule purports to provide for multiple levels of care for inmates with mental illness ranging from inpatient hospital beds to outpatient services.  The FDOC has designated Dade CI as one of the facilities providing inpatient mental health services.

20.  Dade CI has approximately 20 Crisis Stabilization Unit (CSU) beds and 176 Transitional Care Unit (TCU) beds. The inpatient unit at Dade CI is part of the FDOC's statewide mental health system and inmates in need of inpatient level of care may be transferred from any institution.

21.  The CSU level of care is supposed to provide intensive psychiatric and psychological care in a highly structured setting.  This level of care is designated for inmates with significant impairments due to serious mental illness who require intensive psychiatric and psychological services in a highly structured inpatient setting.

22.  The TCU level of care is supposed to provide psychiatric and psychological treatment in a structured residential setting.  This level of care is designated for inmates with significant

impairments due to serious mental illness.  These patients' needs are not so severe as to require CSU level of care, but they still cannot function in a general population setting.

23.    The CSU and TCU make up the inpatient unit at Dade CI.  Most inmates in the Dade CI inpatient unit are housed in solitary confinement conditions.

24.    The doors to the cells in the Dade CI inpatient units are solid with a small window.  There is also a small port that is locked from the outside except when it is opened to slide in meals or for the inmate to extend his wrists to be handcuffed before he leaves the cell.

25.    Dade CI inpatient inmates eat all of their meals in their cells.

26.    Inmates in the Dade CI inpatient unit are locked in their cells at all times unless they are attending a specific activity such as recreation yard, a therapy session or going to the showers.  Officers use physical restraints on many inpatient inmates when they are removed from their cell and the inmates are always escorted by staff.

27.    According to the FDOC contract with Defendant Wexford as well as FDOC's own policy, inmates in the TCU and CSU are to be provided a minimum of 12 hours of out-of-cell structured therapeutic services per week in addition to out of cell time for recreational purposes.

28.    The Dade CI inpatient unit treatment staff consisting of a psychiatrist, a psychologist, mental health specialists and nursing staff, are all employed by Wexford.

29.    Uniformed FDOC correctional staff run the security operations of the inpatient unit and control all movement of inmates and staff.

**Facts Regarding Abuse and Discrimination Against Inmates with Mental Illness**

30.    From at least 2011 to the present date, inmates with serious mental illness in the Dade CI inpatient mental health unit have been subjected to abuse and discrimination on a

6

systematic and regular basis by correctional officers assigned to supervise the inpatient unit.  This abuse and discrimination continues today.

31.     Correctional officers working in the Dade CI inpatient mental health unit have subjected inmates to torture and abuse including a practice known as the "shower treatment" in which severely mentally ill inmates are locked in a scalding hot shower for hours at a time as retaliation.  Other forms of abuse were and are still common on the Dade CI inpatient unit including subjecting inmates to physical beatings, depriving them of food, and harassing them verbally and physically.

32.     Dade CI correctional officials, including supervisors on the inpatient unit and the prison warden, have had actual knowledge of the abuse of inmates on the inpatient mental health unit by correctional officers but have failed to take any steps to stop the abuse.

33.     The warden of Dade CI had, and continues to have, the authority within the FDOC to stop the abuse of inmates on the inpatient mental health unit by correctional officers but has failed to do so.

34.     Defendant Secretary knew of the abuse at the Dade CI inpatient unit because former treatment staff and inmates repeatedly complained verbally and in writing to prison officials at Dade CI and to the FDOC Inspector General's office regarding the abuse.

35.     The Inspector General for the FDOC is appointed by and reports to the Secretary of the FDOC, Defendant Secretary.  *See* § 20.055(3)(b), Fla. Stat. (2014). The Inspector General is under the supervision of the Defendant Secretary and is not subject to supervision by any other employee of FDOC.  *Id.*

36.     The circumstances surrounding the deaths of at least two inmates on the Dade CI inpatient unit put Defendant Secretary on notice of the ongoing abuse on the unit.

7

37.   In spite of this knowledge, for over two years Defendant Secretary took no action to require any investigation to stop the continuing abuse on the Dade CI inpatient unit.

38.   The Dade CI inpatient unit treatment staff employed by Wexford had knowledge of the abuse of inmates by correctional officers in the Dade CI inpatient unit.

39.   Wexford treatment staff working the inpatient unit had actual knowledge that correctional officers were using the "shower treatment" as retaliation for the behaviors of mentally ill inmates on the Dade CI inpatient unit.

40.   Some of the treatment staff working the Dade CI inpatient unit reported the abuse to Wexford supervisory staff.  Wexford supervisory staff did nothing to report the allegations of abuse or investigate the allegations of abuse.  Wexford supervisory staff told treatment staff not to do anything regarding the allegations of abuse.

41.   In spite of the actual knowledge of the abuse, Wexford supervisory staff at Dade CI made no attempt to report or stop the abuse by the Dade CI inpatient unit correctional officers.

42.   Wexford had and continues to have a custom, policy, and practice of failing to intervene or failing to report instances of abuse by correctional officers on inmates in the Dade CI inpatient mental health unit.

**Specific Allegations Regarding Abuse**

43.   In 2011, a psychological counselor at Dade CI reported several instances of physical abuse by correctional officers on inmates in the Dade CI inpatient unit to prison officials at Dade CI, including the warden. The counselor indicated that the abuse included officers kicking and beating an inmate while he was restrained.

44.   The counselor reported that abuse of inmates on the Dade CI inpatient unit by correctional officers occurred on a regular basis.

45.    The counselor filed a variety of complaints with the Dade CI prison officials and the

       FDOC Inspector General office about the abusive treatment but never received a response.

46.    The counselor's employment at Dade CI was subsequently terminated.  No action was

       taken by prison officials on the counselor's reports of abuse.

47.    In June 2012, Darren Rainey, an inmate with a long history of serious mental illness, was

       housed in the inpatient unit at Dade CI for the purpose of treatment for his mental illness.

48.    In mid- to late June 2012, Mr. Rainey's mental status began to seriously deteriorate while

       he was housed in the Dade CI TCU.  He became increasingly agitated and delusional.

49.    Mr. Rainey's behaviors were a direct result of his mental illness.  His actions often

       angered the correctional officers and made him a target of abuse by the officers working

       on the Dade CI inpatient unit.

50.    On the evening on June 23, 2012, correctional officers on the inpatient unit removed Mr.

       Rainey from his cell, placed Mr. Rainey in physical restraints and escorted him to a locked

       shower stall located on the second floor of the inpatient unit.  The purpose of moving Mr.

       Rainey to the shower was to subject him to the "shower treatment."

51.    The officers turned the water temperature to scalding hot levels and left Mr. Rainey in the

       shower.  He was left in the shower for about one-and-a-half hours.

52.    When the officers returned to check on Mr. Rainey, he was found lying in the shower with

       burns over 90% of his body.  Although outside medical assistance was summoned, Mr.

       Rainey died at the prison.

53.    In June of 2012, a few days after Rainey's death, an inmate housed on the Dade CI

       inpatient unit filed a grievance with the Dade CI administration reporting that Mr. Rainey

       had been killed by correctional officers.  The inmate reported that the same officers that

killed Mr. Rainey had also threatened him.  The inmate's information was referred to the FDOC Inspector General's office.

54.     Someone from the FDOC interviewed the inmate but neither Defendant Secretary nor any other FDOC official took other action on the allegations.

55.     Neither Defendant Secretary nor any other FDOC official interviewed any inpatient treatment staff or correctional officers working on the Dade CI inpatient unit regarding Mr. Rainey's death.  They also did not investigate allegations of abuse by correctional officers on other inmates in the Dade CI inpatient unit.

56.     In October 2012, the FDOC Inspector General's office closed the investigation into Mr. Rainey's death and took no further action on the matter.  Not one Dade CI employee was suspended or disciplined as a result of the allegations of abuse against Mr. Rainey or other inmates.

57.     Mr. Rainey was not the only Dade CI inpatient mental health unit inmate to be subjected to the torture of the scalding shower.  Numerous other inmates, all with serious mental illnesses, were placed in the shower as retaliation for behaviors that correctional officers did not like even though the behaviors were the direct result of the inmate's mental illness.

58.     Again, in February 2013, at least two inmates on the Dade CI inpatient unit filed grievances regarding the abuse by correctional officers of inmates on the inpatient unit. One of the grievances stated that correctional officers routinely used the hot shower "as punishment on the most severely mentally ill inmates" on the Dade CI inpatient unit.  The grievance named three of the inmates subjected to the shower treatment.  The FDOC response to the grievances merely stated that the allegations had been referred to the Inspector General's office.

59.    For more than a year, Defendant Secretary and FDOC officials failed to follow up on the Dade CI inpatient unit abuse allegations and never interviewed any of the inmates referenced in the grievances.

60.    One of the inmates named in the February 2013 grievance was inmate D.G[2].

61.    Inmate D.G. was housed in an inpatient mental health unit at Dade CI from August 2011 to September 2012.

62.    D.G. is an inmate with a serious mental illness and a diagnosis of schizophrenia.

63.    As a result of his mental illness, D.G. is often unable to communicate to correctional officers or staff in a coherent fashion.  As a result of his mental illness, D.G. would often yell incoherently and bang or kick on his cell door in the Dade CI inpatient unit.

64.    In 2012, correctional officers at Dade CI repeatedly subjected inmate D.G. to the "shower treatment" as retaliation for behaviors resulting from his mental illness.

65.    Correctional officers would often abuse D.G. in additional ways, including denying him food, throwing him to the floor, yanking his arms with his handcuffs and various forms of verbal taunting and abuse.

66.    As a result of the abuse, D.G. suffered significant weight loss and a significant exacerbation of his mental illness.

67.    Supervisory correctional officers, including sergeants and lieutenants assigned to the Dade CI inpatient unit, were aware of abuse of D.G. but failed to stop it or report it.

---

[2] The people identified by their initials in this pleading are inmates with mental illness housed in an FDOC inpatient mental health unit.  Their initials are used to protect their confidentiality. Plaintiffs will disclose the identities of these inmates outside of public pleadings and pursuant to a confidentiality agreement with Defendants.

68. Wexford treatment staff working the Dade CI inpatient unit had actual knowledge of the abuse by correctional officers on D.G. and failed to take any steps to intervene or stop the abuse.

69. Inmate M.A. is housed in the inpatient unit at Dade C.I.  M.A. has been housed in the inpatient unit at Dade C.I. since January 2011.

70. M.A. is an inmate with serious mental illness and a diagnosis of schizophrenia.

71. As a result of his mental illness, M.A. has difficulty communicating with correctional officers or staff in a coherent manner.  As a result, M.A. would often yell, sing, or respond to delusions in his cell.

72. Correctional officers would subject M.A. to the "shower treatment" as well as other forms of physical and verbal abuse as punishment for exhibiting these behaviors that are a manifestation of his mental illness.

73. As a result of the abuse, M.A. suffered a significant exacerbation of his mental illness.

74. Supervisory correctional officers, including sergeants and lieutenants assigned to the Dade CI inpatient unit, were aware of abuse of M.A. but failed to stop it or report it.

75. Wexford treatment staff working in the Dade CI inpatient unit had actual knowledge of the abuse by correctional officers on M.A. and failed to take any steps to intervene or stop the abuse.

76. In September of 2013, inmate Richard Mair was housed in an inpatient mental health unit at Dade CI.  He was housed on the unit from January 2013 until his suicide on the Dade CI inpatient unit in September 2013.

77. Mr. Mair was an inmate with a serious mental illness.  He had the diagnosis of major depressive disorder.

78.    Mr. Mair had multiple suicide attempts including one in late 2012 in which he ingested batteries and razor blades.

79.    Prior to his death, Mr. Mair repeatedly complained of physical and mental abuse by correctional staff against him and other inmates on the Dade CI inpatient unit.  No investigation was done by Dade CI administration or the FDOC Inspector General's office regarding his allegations.

80.    On or about September 11, 2013, Mr. Mair committed suicide in his Dade CI inpatient mental health unit cell.  Mr. Mair left a note in his cell indicating that his suicide was caused, at least in part, by continuing abuse by correctional staff on the unit.

81.    Supervisory correctional officers, including sergeants and lieutenants assigned to the Dade CI inpatient unit, were aware of the abuse of Mr. Mair and failed to make any effort to stop it or report it.

82.    The FDOC Inspector General's office reviewed Mr. Mair's death.  Neither Defendant Secretary nor FDOC officials did anything in response to the allegations of ongoing abuse of inmates on the inpatient unit contained in Mr. Mair's suicide note.

83.    Wexford treatment staff working the Dade CI inpatient unit had actual knowledge of the abuse by correctional officers on inmate Mr. Mair and failed to take any steps to intervene or stop the abuse.

84.    When inmates report abuse to Wexford's treatment staff at Dade CI, the staff refuses to intervene or report the abuse.  For example, inmate D.M., an inmate housed on the Dade CI inpatient unit in 2012 and 2013, reported the ongoing abuse by correctional officers to treatment staff during a therapy session.  The staff member told D.M. that he could not help the inmates because the actions by the correctional officers were a "security issue."

85.     Neither Defendant Secretary nor any FDOC officials made any effort to investigate Mr.
        Rainey's death or the other allegations of abuse on inmates on the Dade CI inpatient unit
        until June of 2014.  The investigation only occurred as a response to a series of highly
        critical articles in the Miami Herald detailing Mr. Rainey's death and the allegations of
        abuse on the Dade CI inpatient unit.

86.     The articles include, among other things, statements attributed to current and former Dade
        CI employees and treatment staff confirming that the abuse of mentally ill inmates on the
        inpatient unit was widespread and systematic.

87.     The FDOC Inspector General's office has reopened its review of Mr. Rainey's death but
        only on the issue of whether the shower in which he was placed was functioning properly.

88.     Defendant Secretary has still not directed an investigation into the systematic and
        widespread abuse of inmates with mental illness by correctional officers at the Dade CI
        inpatient unit.

89.     No correctional officers involved in the death of Mr. Rainey or the abuse of other inmates
        on the Dade CI inpatient unit have been suspended or disciplined by Defendant Secretary
        for their involvement in Mr. Rainey's death or abuse on the Dade CI inpatient unit.
        Several of the correctional officers involved in the abuse are still employed by the FDOC
        and some have been promoted over the last two years since Mr. Rainey's death.

90.     Defendant Secretary, through the FDOC Inspector General and other high ranking FDOC
        officials including the current Deputy Secretary of the FDOC, knew about the "shower
        treatment" and the widespread abuse of inmates with mental illness at the Dade CI
        inpatient unit starting with reports in 2011 and 2012.

91.     The failure of Defendant Secretary and the FDOC to adequately investigate the allegations of abuse and to discipline and supervise the correctional staff at the Dade CI inpatient unit has directly resulted in a pattern and practice of systematic abuse of inmates on the inpatient unit by correctional officers.  The failure of Defendant Secretary and the FDOC to investigate and stop the abuse has caused, and continues to cause, inmates physical and mental harm, exacerbation of their mental health symptoms, and death.

92.     The failure of Defendant Secretary and the FDOC to investigate and stop the abuse on the Dade CI inpatient unit is particularly egregious because the allegations involved inmates with serious mental illness housed on an inpatient treatment unit.  Defendant Secretary, through his Inspector General, knew that many of these inmates, such as D.G. and M.A., are particularly vulnerable to abuse because the severity of their mental illness renders them unable to complain or report abuse upon them.

93.     The abuse of inmates with mental illness on the inpatient unit at Dade CI has caused ongoing and severe harm to the inmates confined there and there is a substantial risk of future harm to the inmates.

94.     Defendant Secretary was aware of the risk of harm caused by the abuse of the inmates confined to the inpatient unit and failed to take reasonable measures to address it.

95.     The verbal and physical abuse of the inmates on the Dade CI inpatient unit was based on the inmates' disabilities.

96.     The verbal and physical abuse of inmates on the Dade CI inpatient unit was severe and pervasive.  The abuse has exacerbated the inmates' mental illness and adversely affected the inmates' participation in treatment on the inpatient unit.

97.  The Defendants had actual knowledge of the abuse and harassment of inmates with mental illness on the unit and failed to take prompt action to stop it.

98.  By failing to stop the abuse of inmates with mental illness housed on the Dade CI inpatient unit, Defendant Secretary excluded those inmates from participation in or denied them the benefits of the FDOC's treatment program or activities, or otherwise discriminated against them.

99.  Plaintiff has no adequate remedy at law.

**Specific Allegations Regarding Inadequate Mental Health Care**

100.  Disability Rights Florida, in its role as the federally designated Protection and Advocacy organization for Florida, has visited Dade CI multiple times to interview inmates and review records.

101.  Multiple inmates have reported that they have never had the opportunity to attend therapeutic group therapy sessions.

102.  Multiple inmates have reported that, aside from brief recreation periods, they spend their entire time at Dade CI confined in their cells alone.

103.  Multiple inmates have reported that they receive very limited time to speak with counselors and psychiatrists.

104.  Review of numerous records indicated staff is performing inadequate assessment to determine the needs of inmates in the mental health units.

105.  Review of numerous records indicates staff is creating Individualized Service Plans that are not adequately identifying or addressing the mental health needs to inmates in the mental health units.

16

106.   Review of numerous records indicated staff failure to adjust Individualized Service Plans when inmates in the mental health unit are failing to progress or when interventions are unsuccessful over a period of time.

107.   Inmate KR has been housed on the inpatient mental health unit at Dade CI since April 2014.  His Dade CI records indicate that he suffers from psychosis, delusions and hallucinations.

108.   KR has a long history of mental illness.  Prior to his incarceration in FDOC in 2011, he was involuntarily committed to inpatient psychiatric facilities on multiple occasions.  He has a history of schizophrenia, psychosis, paranoia, and hallucinations.

109.   Since his admission at Dade CI inpatient unit, KR has been medicated with Haloperidol (trade name Haldol), an antipsychotic medication used in the treatment of schizophrenia and acute psychosis.

110.   In addition to injections of Haldol, KR's inpatient treatment plan at Dade CI calls for weekly group therapy sessions and individual counseling sessions.  He is not receiving either weekly group sessions or individual counseling.

111.   Since at least August 2014, Wexford has not had sufficient numbers of trained staff to provide the group or individual therapy needed and called for in KR's treatment plan.

112.   Medication alone is not sufficient to treat the symptoms of KR's mental illness.  His extended isolation and confinement in a solitary cell have exacerbated his illness.

113.   Since at least August of 2014, as a result of insufficient staffing and mental health interventions, KR has spent nearly 24 hours a day confined alone in his cell.  Dade CI records indicate that he has made no progress on his psychological symptoms during that time.

114. KR's mental health symptoms have continued to deteriorate and behaviors directly related to his mental illness have worsened.  As a result, he was recently involved in altercations with Dade CI staff where force was used against him.

115. The inadequate mental health treatment of inmates with mental illness on the inpatient unit at Dade CI has caused ongoing and severe harm to the inmates confined there and there is a substantial risk of future harm to the inmates.

116. Defendants Secretary and Wexford were aware of the risk of harm caused by this inadequate mental health treatment and failed to take reasonable measures to address it.

117. The Defendants had actual knowledge through contract monitoring and other sources of the inadequate mental health care of inmates with mental illness on the unit and failed to take prompt action to stop it.

118. Plaintiff has no adequate remedy at law.


**Count One**
**(42 U.S.C. § 1983 against Defendant Jones for**
**Violations of the Eighth Amendment Due to Abuse)**

119. Plaintiff repeats and realleges paragraphs 1 through 118 as if fully set forth herein.

120. The Eighth Amendment protects prison inmates from excessive uses of force by prison officials.  The Eighth Amendment also imposes duties on prison officials to provide humane conditions of confinement; to ensure that inmates receive adequate food, clothing, shelter, and medical care; and to take reasonable measures to guarantee the safety of the inmates.

121. The physical abuse and brutality by FDOC correctional officers against inmates with mental illness housed on the inpatient unit at Dade CI was so excessive and unnecessary as to constitute a violation of the Eighth Amendment of the United States Constitution.

122. The physical abuse and brutality by FDOC correctional officers against inmates with mental illness housed on the inpatient unit at Dade CI was imposed maliciously and sadistically for the very purpose of causing harm and was unrelated to any good faith effort to maintain or restore discipline.

123. The physical abuse and brutality by FDOC correctional officers against inmates with mental illness housed on the inpatient unit at Dade CI caused death and serious harm to the inmates housed on the unit.  It continues to pose a substantial risk of harm to the inmates that are now or may in the future be housed on the inpatient unit.

124. Defendant Secretary had actual knowledge of the abuse of inmates on the Dade CI inpatient mental health unit and knew that the abuse posed a pervasive risk of harm to those inmates.  Defendant Secretary's response to the risk was so inadequate and unreasonable that it constitutes deliberate indifference to the inmates' rights as guaranteed by the Eighth Amendment to United States Constitution.

125. Defendant Secretary's actions and inactions have caused continuing violations of the Eighth Amendment rights of Disability Rights Florida's clients and constituents housed at Dade CI.


**Count Two**
**(42 U.S.C. § 1983 against Defendant Wexford for**
**Violations of the Eighth Amendment Due to Abuse)**

126. Plaintiff repeats and realleges paragraphs 1 through 118 as if fully set forth herein.

19

127.   The Eighth Amendment protects prison inmates from excessive uses of force by prison officials.  The Eighth Amendment also imposes duties on prison officials to provide humane conditions of confinement; to ensure that inmates receive adequate food, clothing, shelter, and medical care; and to take reasonable measures to guarantee the safety of the inmates.

128.   The physical abuse and brutality by FDOC correctional officers against inmates with mental illness housed on the inpatient unit at Dade CI was so excessive and unnecessary as to constitute a violation of the Eighth Amendment of the United States Constitution.

129.   The physical abuse and brutality by FDOC correctional officers against inmates with mental illness housed on the inpatient unit at Dade CI was imposed maliciously and sadistically for the very purpose of causing harm and was unrelated to any good faith effort to maintain or restore discipline.

130.   The physical abuse and brutality by FDOC correctional officers against inmates with mental illness housed on the inpatient unit at Dade CI caused death and serious harm to the inmates housed on the unit.  It continues to pose a substantial risk of harm to the inmates that are now or may in the future be housed on the inpatient unit.

131.   Defendant Wexford has had knowledge of the abuse of inmates on the Dade CI inpatient mental health unit and knew that the abuse posed a pervasive risk of harm to those inmates but Wexford employees have failed to report the abuse or to otherwise intervene to halt the abuse.

132.   The actions and inactions of Wexford's employees were the result of Wexford's custom, policy or practice of failing to report or intervene in instances of abuse by correctional officers on inmates in the Dade CI inpatient mental health unit.

133. Defendant Wexford's custom, policy or practice of failing to report or intervene in instances of abuse by correctional officers on inmates in the Dade CI inpatient mental health unit constitutes reckless disregard of a substantial risk of serious harm to those inmates.

134. Defendant Wexford's custom, policy or practice has resulted in the continuing abuse to inmates housed in the Dade CI inpatient mental health unit in violation of their rights as guaranteed by Eighth Amendment to the United States Constitution.

135. Defendant Wexford's actions and inactions have caused continuing violations of the Eighth Amendment rights of Disability Rights Florida's clients and constituents housed at Dade CI.

**Count Three**
**(ADA and Rehabilitation Act Claims Against Defendant FDOC)**

136. Plaintiff repeats and realleges paragraphs 1 through 118 as if fully set forth herein.

137. The Federal Rehabilitation Act prohibits discrimination against an individual based on disability by any program or entity receiving federal funds. 29 U.S.C. 794(a) and (b)(2)(B).

138. Title II of the Americans with Disabilities Act prohibits disability-based discrimination by any public entity. 42 U.S.C. §§ 12131-12132.

139. These disability anti-discrimination laws impose an affirmative duty on public entities to create policies or procedures to prevent discrimination based on disability.

140. The inmates housed on the Dade CI inpatient unit are persons with disabilities as defined in the Rehabilitation Act and Title II of the ADA.

141. Defendant FDOC is a program or entity which receives federal financial assistance.

142.    Defendant FDOC is a public entity as defined by Title II of the ADA.

143.    Defendant FDOC's inpatient mental health unit is a facility and its operation comprises a program and services for purposes of the Rehabilitation Act and Title II of the ADA.

144.    The inmates housed on the Dade CI inpatient unit are qualified to participate in or receive the benefit of FDOC's services, programs, or activities.

145.    The inmates housed on the Dade CI inpatient unit were abused because of their disabilities by FDOC's agents and employees at Dade CI.   Such abuse constitutes discrimination against individuals based on their disability in violation of the Rehabilitation Act and Title II of the ADA.

146.    The abuse of inmates housed on the Dade CI inpatient unit by FDOC's agents and employees denied those inmates the benefits of the services, programs, or activities of FDOC's inpatient unit in violation of the Rehabilitation Act and Title II of the ADA.

147.    The abuse of inmates housed on the Dade CI inpatient unit was carried out by Defendant FDOC's agents and employees at Dade CI while acting within the scope of their employment by FDOC.  Defendant FDOC is liable for the actions of its agents and employees when they committed the violations of the Rehabilitation Act and Title II of the ADA alleged herein.

148.    FDOC has discriminated against Disability Rights Florida's clients and constituents housed at Dade CI, by failing to provide a non-abusive, safe treatment environment on the inpatient unit that will allow inmates with mental illness to participate in the treatment program at Dade CI.


**Count 4**
**(42 U.S.C. § 1983 against Defendant Secretary for**

**Violations of the Eighth Amendment Due to Inadequate Mental Health Treatment)**

149.  Plaintiff repeats and realleges paragraphs 1 through 118 as if fully set forth herein.

150.  The Eighth Amendment's prohibition on cruel and unusual punishment obligates prison officials to provide prisoners with adequate medical and mental health care.  Defendant's policies and procedures violate the Eighth Amendment rights of prisoners with mental illness.

151.  As a matter of policy and practice, the Defendant failed to provide adequate assessments, service plans, and mental health interventions to inmates with serious mental illness, which led to the deterioration of the inmates' mental health.

152.  By failing to provide constitutionally adequate mental health care, Defendant violated the rights of inmates with serious mental illness to be free from cruel and unusual punishment.

153.  The Defendant is acting with deliberate indifference to the serious mental health treatment needs of, and the substantial risk of harm to, inmates with serious mental illness.

154.  Defendant Secretary had actual knowledge of the inadequate mental health treatment of inmates on the Dade CI inpatient mental health unit and knew that this posed a pervasive risk of harm to those inmates.  Defendant Secretary's response to the risk was so inadequate and unreasonable that it constitutes deliberate indifference to the inmates' rights as guaranteed by the Eighth Amendment to United States Constitution.

155.  Defendant Secretary's actions and inactions have caused continuing violations of the Eighth Amendment rights of Disability Rights Florida's clients and constituents housed at Dade CI.

**Count 5**
**(42 U.S.C. § 1983 against Defendant Wexford for**

**Violations of the Eighth Amendment Due to Inadequate Mental Health Treatment)**

156.   Plaintiff repeats and realleges paragraphs 1 through 118 as if fully set forth herein.

157.   The Eighth Amendment's prohibition on cruel and unusual punishment obligates prison officials to provide prisoners with adequate medical and mental health care.  Defendant Wexford's policies and procedures violate the Eighth Amendment rights of prisoners with mental illness.

158.   As a matter of policy and practice, the Defendant Wexford failed to provide adequate assessments, service plans and mental health interventions to inmates with serious mental illness, which led to the deterioration of the inmates' mental health.

159.   By failing to provide constitutionally adequate mental health care, Defendant Wexford violated the rights of inmates with serious mental illness to be free from cruel and unusual punishment.

160.   Defendant Wexford is aware of these conditions at Dade CI and the dire consequences its actions and inactions have had on inmates with serious mental illness.

161.   Defendant Wexford is acting with deliberate indifference to the serious mental health treatment needs of, and the substantial risk of harm to, inmates with serious mental illness.

162.   Defendant Wexford's custom, policy or practice has resulted in the continuing provision of inadequate mental health care to inmates housed in the Dade CI inpatient mental health unit in violation of their rights as guaranteed by Eighth Amendment to the United States Constitution.

163.   Defendant Wexford's actions and inactions have caused continuing violations of the Eighth Amendment rights of Disability Rights Florida's clients and constituents housed at Dade CI.

**Request for Relief**

Therefore, Disability Rights Florida, on behalf of the mentally ill inmates who are currently confined at the inpatient mental health unit at Dade CI, requests that this Court:

A.     Accept jurisdiction of this case and set it for hearing at the earliest opportunity;

B.     Declare that the actions and inactions of the Defendants are unlawful and unconstitutional for the reasons as specified above;

C.     Enter an injunction that requires Defendant Secretary to:

    1.  cease all actions that violate the constitutional and statutory rights of the mentally ill inmates confined at the Dade CI inpatient unit as well as those inmates who may, at some point in the future, be transferred to the inpatient unit at Dade CI;

    2.  take immediate action to investigate and stop the ongoing abuse of inmates with mental illness at Dade CI;

    3.  immediately take steps to train and supervise the officers assigned to the inpatient unit to ensure that the abuse does not recur;

    4.  develop a system of periodic independent oversight of the Dade CI inpatient unit; and

    5.  take immediate steps to ensure the timely investigation of allegations of abuse upon inmates in the inpatient mental health unit;

D.     Enter an injunction that requires Defendant Wexford to:

    1.  change its custom, policy or practice at Dade CI so as to require its employees at Dade CI to immediately report allegations of abuse; and

    2.   change their customs, policies, and practices to ensure that inmates with serious mental illness receive constitutionally adequate mental health treatment;

E.    Enter an injunction that requires Defendant Florida Department of Corrections to stop discriminating against the inmates on the Dade CI inpatient unit on the basis of disability;

E.    Retain jurisdiction over this matter to ensure that the terms of any injunction are fully implemented;

F.    Award Plaintiff its costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. § 794; and

F.    Award all other necessary and appropriate relief that this Court may deem appropriate.

DATED: January 23, 2015

Respectfully Submitted,
/s/ Peter P. Sleasman
Peter P. Sleasman, Esq.
Fla. Bar No. 367931
Lead Counsel

Kristen Cooley Lentz, Esq.
Fla. Bar No. 649635

Florida Institutional Legal Services Project
Florida Legal Services
14260 W. Newberry Road, #412
Newberry, FL 32669
(352) 375-2494 (telephone)
(352) 331-5202 (facsimile)
peter@floridalegal.org
kristen@floridalegal.org

David Boyer, Esq.
Florida Bar No. 90917

Molly J. Paris, Esq.

Florida Bar No. 90486

Disability Rights Florida
1930 Harrison St Ste 104
Hollywood, Florida 33020
(850)488-9071 (telephone)
(850)488-8640 (facsimile)
davidb@DisabilityRightsFlorida.org
mollyp@DisabilityRightsFlorida.org

George E. Schulz, Jr., Esq.
Fla. Bar No. 169507

Holland & Knight LLP
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
(904) 353-2000
(904) 358-1872 (facsimile)
buddy.schulz@hklaw.com

Attorneys for Plaintiff

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was served via email and CM/ECF

on January 23, 2015 to all counsel of record listed on the following service list.

<u>/S/</u>_____

David A. Boyer, FBN 90917

<u>**SERVICE LIST**</u>

Devang Desai, Esq.
Gaebe, Mullen, Antonelli & Dimatteo
420 South Dixie Highway, 3<u>rd</u> Floor
Coral Gables, FL  33146
ddesai@gaebemullen.com
Attorney for Defendant Wexford

Susan A. Maher
Chief Assistant Attorney General
Corrections Litigation
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL  32399-1050
susan.maher@myfloridalegal.com
Attorney for Defendant Secretary, FDOC