IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:14-CV-23323-SCOLA/OTAZO-REYES

**DISABILITY RIGHTS OF FLORIDA, INC.,**
on behalf of its clients and constituents,

                Plaintiff,

vs.

**JULIE JONES, SECRETARY,
FLORIDA DEPARTMENT OF CORRECTIONS,**
in her official capacity; **WEXFORD
HEALTH SOURCES, INC., and FLORIDA
DEPARTMENT OF CORRECTIONS,**

                Defendants.
_____/

## PRIVATE SETTLEMENT AGREEMENT

The Plaintiff, as a Protection and Advocacy System (P&A) under federal law to "ensure the rights of individuals with mental illness are protected," seeks declaratory and injunctive relief on behalf of persons with mental illness confined by the State of Florida at Dade Correctional Institution (Dade CI). Through a series of mediations, the Plaintiff and Defendants have reached a Private Settlement Agreement as to a plan for settling this litigation. The Court stayed the case while the matter was in mediation. Upon execution of this Private Settlement Agreement, the parties agree to submit a joint motion administratively close this case until May 31 2017, in accordance with the terms of this Agreement. The Private Settlement Agreement is contingent upon the Court's ordering the administrative closure of the case during the implementation of the Agreement. The Agreement of the parties is as follows:

1

**I.  INTRODUCTION AND SUMMARY**

This Agreement is entered into to address the issues raised in the above named case involving inmates with mental illness confined at Dade CI in the institution's Crisis Stabilization Unit (CSU) and Transitional Care Unit (TCU).  The Plaintiff claims there has been abuse and discrimination against inmates with mental illness at Dade CI as well as inadequate mental health care.  This Agreement is intended to resolve the claims raised in this case as outlined below.

**II.  DEFINITIONS**

1. "Assessment" means a review of the adequacy in the provision of mental health treatment services and a review of policies and procedures for addressing and minimizing abuse and discrimination for inmates in the CSU and TCU at Dade CI by consultants based upon their site visits for the purpose of providing the Parties with reports and recommendations.  The parameters for conducting the site visits are attached as Exhibit A, Site Visit Guidelines.

2. "CAPs" means Corrective Action Plans issued by the Department of Corrections in connection with contract compliance audits.

3. "Confidentiality Agreement" means the agreement entered into by the parties allowing access to and protecting the confidentiality of any health care information of current or former inmates housed in the CSU or TCU at Dade CI.  The agreeement is attached as Exhibit B.

4. "Contractor" means Defendant Wexford Health Sources, Inc.

5. "CSU" means crisis stabilization unit as defined in Florida Administrative Code 33-404.

6. "Dade CI" means Dade Correctional Institution.

7. "Department" means the Florida Department of Corrections.

8. "Full Security Staffing" means that all security staffing posts at Dade CI will be funded and available for staffing by the Department.

9. "Implementation Plan" means the agreements contained in this Settlement Agreement including the Plan of Compliance.

10. "Inpatient Units" means the CSU and TCU at Dade CI.

11. "Mental health services" means those services and activities defined in Florida Administrative Code 33-404.101(1).

12. "Plan of Compliance" means the plan agreed to by the Parties based on the recommendations contained in the reports by the consultants after the assessments.

13. "Security staff" means any staff involved in the direct supervision and control of inmates ion the CSU or TCU at Dade CI, or in supervising staff with such responsibilities.

14. "TCU" means transitional care unit as defined in Florida Administrative Code 33-404.

### III. IMPLEMENTATION PLAN

**A.   Crisis Intervention Training**

The Department agrees to provide Crisis Intervention Training (CIT) to all security staff, including correctional officers, correctional officer supervisors, lieutenants, captains, assistant wardens and the warden at Dade CI. This initial CIT was completed as of December 31, 2014. The Department further agrees to provide Crisis Intervention Training to all new correctional officers at Dade CI when they are hired.

**B.   Specialized Training for Inpatient Units**

The Department agrees to provide specialized training to all correctional officers posted in the TCU/CSU at Dade CI. This specialized training consists of eight (8) hours and focuses on

the supervision and care of inmates in the mental health inpatient units (TCU/CSU) of Dade CI. [See Exhibit C.] This specialized training has been completed . Subsequent training will be provided to new staff no less than annually but more frequently as new staffing due to turnover dictates.

C.  **Hands-On Training of Supervisory Staff and Other Key Staff in Inpatient Units**

The Department agrees to temporarily transfer experienced supervisory security staff from other agency inpatient mental health treatment units to Dade CI for up to one week of supervisory training and oversight. This enhanced training occurred in December 2014 and has been completed.

D.  **Security Enhancements**

The Department agrees to upgrade and enhance the security video monitoring system in the TCU/CSU at Dade CI. The Department also agrees to a pilot program for an audio monitoring system enhancement in the TCU/CSU at Dade CI. These enhancements were completed as of December 31, 2014.

E.  **Authorization for Full Security Staffing at Dade CI**

The Department agrees to authorize hiring for all security vacancies in accordance with the requirements for full staffing at Dade CI. The hiring process has commenced and is ongoing.

F.  **Creation of Position of Assistant Warden for Inpatient Mental Health Unit at Dade CI**

The Department agrees to create an additional Assistant Warden position with specialized duties assigned for the management and oversight of all operations and services in the CSU/TCU at Dade CI. Additional duties shall include but are not limited to coordinating with the Clinical Director of the mental health unit and with the Mental Health Ombudsman to ensure compliance with Department policies and security operations responsiveness to the issues

and concerns identified by the Mental Health Ombudsman.  This position shall be established and filled by March 31, 2015.

G. **Creation of Central Office Mental Health Ombudsman Position and Regional Mental Health Ombudsman Position for Region III**

The Department agrees to establish Mental Health Ombudsman positions at the Department's Central Office and Region III.  The Central Office and Region III Mental Health Ombudsman positions have been established and advertised.  The Region III Mental Health Ombudsman shall be located at Dade CI and shall serve the inpatient mental health units located at  Dade CI, South Florida Reception Center, and Charlotte Correctional Institution.  The Regional Mental Health Ombudsman position shall report to the Central Office Mental Health Ombudsman.  The Central Office Mental Health Ombudsman shall report to the Director of Mental Health.  The Central Office Mental Health Ombudsman shall be responsible for the administration of the Mental Health Ombudsman program, and provide leadership and supervision over all its activities to ensure ongoing review of inpatient mental health treatment, services and required activities.

H. **Installation of Televisions in Common Areas for Therapeutic Out of Cell Activities**

The Department agrees to install televisions in the common areas of the inpatient units at Dade CI for use in therapeutic activities and programming as well as for leisure-time activities.  The televisions have been purchased and installation shall be completed as of February 28, 2015.  The Department also has taken other steps within the inpatient units at designated locations to encourage and enhance out of cell therapeutic activities and programming.

I. **Delivery of Mental Health Services**

The Department agrees to assure that the Contractor performs the contract and provides

treatment as mandated by the contract for services. The Department reserves the right to renegotiate any contract or re-procure mental health services as may be necessary.

**1. Contract Compliance**

The Department agrees to routinely audit the performance of the Contractor in accordance with the performance measures provided for in the contract and agrees to issue and monitor implementation of any corrective action plans (CAPS) necessary to bring the treatment provider into compliance with the contract performance measures. Copies of any CAP together with the responses to the CAP shall be provided to Plaintiff and its counsel upon issuance. A failure of the Contractor to meet any particular performance measure shall not constitute a material breach of this settlement agreement unless it evidences a material breach of constitutionally mandated care.

The Contractor agrees to implement and conduct the following in order to provide treatment as mandated by the contract for services:

a. The Contractor agrees to provide specialized training to all current and new hires at the TCU/CSU at Dade CI as it relates to reporting workplace violence/bullying. Further, each Contractor's employee will be provided with a policy regarding incidents of violence in the workplace and/or workplace bullying and reporting the same. Each employee will be required to acknowledge receipt of said policy and this acknowledgment will be maintained by the Contractor in the employee's personnel file. This specialized training and the execution of the Contractor's policy has already been implemented.

b. The Contractor shall advise its employees that they are to directly report any incidents of abuse at the TCU/CSU at Dade CI directly to the Contractor's Florida Director of Operations,

the State of Florida Inspector General's Office or to the Contractor's Regional Manager.

c.      The Contractor agrees to hire an additional 3.4 Behavioral Health Technicians for the TCU/CSU at Dade CI in order to provide quality healthcare to the inmates at the TCU/CSU at Dade CI and ensure for contract compliance.  The hiring of these additional Behavioral Health Technicians has already commenced.

d.      The Contractor agrees to conduct a weekly internal audit of ten (10) charts at the TCU/CSU at Dade CI to ensure that performance measures established under the contract are being adhered to and that any corrective actions that need to be made are being made to meet the minimum standard of care required by the U.S. Constitution.  This weekly internal audit of ten charts has already commenced.

e.      The Contractor agrees to conduct bi-monthly visits by Senior Officials to the TCU/CSU at Dade CI in order to audit twenty (20) charts randomly selected by the Department's statistician to ensure that performance measures established under the contract are being adhered to and that any corrective actions that need to be made are being made to meet the minimum standard of care required by the Constitution.

**2. Other Corrective Action Through Assessments:**

**a.  The Assessments:**

The Department and the Contractor agree to engage consultant Dr. Jeffery Janofsky, Associate Professor of Psychiatry and Behavioral Sciences and Director of the Psychiatry and Law Program at Johns Hopkins University School of Medicine and  Clinical Professor of Psychiatry at the University of Maryland School of Medicine in Baltimore, Maryland, to conduct an assessment of the mental health services at the CSU and TCU at Dade CI for the purpose of

providing the Department with the status of the level of mental health care in those units and any corrective actions that may need to be made to assure that the level of care meets the standard of care required by the Constitution as reflected by community standards.  The Department further agrees to engage one additional consultant with expertise in the area of correctional security to review and provide recommendations with regard to the claims of abuse and discrimination against the residents in the CSU and TCU units at Dade CI.   The Plaintiff agrees to engage a team of two similar consultants: Dr. Kathryn Burns (psychiatrist) and Philip Wise (security expert).  The consultants for Defendants and Plaintiff shall conduct assessments and provide reports on the timetable set out below or on some other timetable as agreed upon by the Parties and supplemented as an amendment to this agreement.  The assessments will address the following areas related to delivery of mental health treatment services: (1) provision of therapeutic group therapy sessions; (2) provision of therapeutic out of cell activities and programming; (3) provision of individual counseling sessions; (4) adequacy of needs assessments; (5) adequacy of the Individualized Service Plans (ISPs), and (6) adequacy of systems to prevent abuse and discrimination of residents of the CSU and TCU at Dade CI.

  After receiving the reports and recommendations of the consultants, based on the timetable below, the Parties shall have 60 days, with the assistance of a mediator if necessary, to jointly create a mutually agreeable Plan of Compliance based on the recommendations provided in the reports.  If the Parties cannot agree on a mutually agreeable Plan of Compliance, then any Party may file a motion to reopen the litigation of this case.

  If the Parties do agree on a Plan of Compliance, the Department in conjunction with the Contractor, will be given a period of six months to implement the Plan of Compliance.  Upon

completion of the implementation phase, the Parties shall conduct independent assessments to determine if compliance with the recommended benchmarks for assuring the constitutional level of mental health care and preventing abuse and discrimination have been achieved.

    **b. The Assessment and Implementation Schedule:**

- **February 2, 2015:** Generate separate lists of all inmates housed in the CSU and TCU at Dade CI and provide to counsel for Plaintiff and counsel for Defendants.

- **March 2015 - April 2015:** Copy complete inpatient and outpatient mental health records of inmates on original sampling list and provide to counsel for Plaintiff and counsel for Defendants in electronic format. Schedule and conduct site visit to the CSU and TCU units at Dade CI. For parameters of conducting the site visit, see Exhibit A.

- **May 2015 - June 2015:** Records review to be conducted.

- **July 2015 - August 2015:**. Consultants conduct interviews of inmates included in random sample records reviews. For parameters of conducting interviews, see Exhibit D.

- **October 31, 2015:** Dr. Janofsky and Dr. Burns submit their assessments reports and recommendations to the Parties and their counsel.

- **November 2015 - December 2015:** The Parties shall meet to negotiate a mutually agreeable Plan of Compliance based on the assessment reports..

- **January 31, 2016**: If the Parties cannot agree to a Plan of Compliance, they shall declare an impasse and shall file a joint motion to reopen the case for litigation.

- **February 2016 - July 2016:** Recommendations contained in the Plan of Compliance shall be implemented over six months by the Department and the Contractor.

- **August 2016 - October 2016:** At the conclusion of the six-month implementation period the Parties' consultants shall conduct a follow-up site visit and record reviews to determine if the Plan of Compliance has been properly implemented. The schedule of the site visit shall be determined by agreement of the Parties and may include resident interviews as requested by the Parties' consultants.

- **November 30, 2016:** The Plaintiff provides notice that corrective action is needed.

- **December 2016 - May 2017:** Notice and Cure period.  See Section IV. 8-11 below.

- **May 31, 2017:** Jurisdiction over the case terminates and the Court dismisses the case with prejudice unless a motion to continue the case is filed by Plaintiff alleging and factually supporting that a material breach of the agreement by Defendants has occurred.

**IV.   AGREEMENT**

1. The parties agree that the Implementation Plan is structured to address all issues which have been raised in the Amended Complaint in this cause and/or are addressed in this Settlement Agreement, and shall be implemented.

2. Defendants have entered into this Agreement in order to avoid the necessity litigation.  Nothing in this Settlement Agreement shall be construed as an admission of liability by Defendants, and this Settlement Agreement cannot be used as an admission by any Party in this or any other proceeding.

3. The Implementation Plan, and this Settlement Agreement, are the product of extensive negotiation sessions and resulting compromise by both Plaintiff and Defendants.

4. To ensure effective implementation of this Settlement Agreement, the Defendants have received input, through counsel from the Plaintiff, who represents the intended beneficiaries of the Plan of Compliance.

5. The Parties may schedule meetings of representatives for the Plaintiff and Defendants to discuss the Plan of Compliance and its implementation, as necessary.  The Parties agree that free, open and frank discussions of problems, limitations and successes will further the achievement of the goals of the Plan of Compliance.

6. During the six-month implementation period of this agreement described in Section III.I.2.b., the Defendants shall provide, upon request by Disability Rights Florida, Inc., the

following records:

      a. Structured Activities Monitoring Instrument, as generated

Nothing in this agreement prohibits either Disability Rights Florida, Inc., (DRF) or Florida Institutional Legal Services (FILS) from having access to clients and the records of the clients during the six-month compliance period; however, access by the experts or consultants of DRF or FILS will be permitted only upon agreement of the Parties and the attorneys of the Parties.

    7. The Parties agree that the Court's jurisdiction continues in this litigation until May 31, 2017, at which time this case will be dismissed with prejudice. However, nothing in this agreement is intended to give the district court jurisdiction to enforce this Settlement Agreement. Further, the Plaintiff may seek to reopen the case from administrative closure and pursue any of the relief requested in this lawsuit only if Plaintiff alleges material breach as evidenced by systemic deficiencies in the Defendants' implementation of the Plan of Compliance, or this Settlement Agreement. In any motion to the Court, Plaintiff shall allege the material breaches and allege that the material breach was identified and proposed to the Defendants, consistent with the Notice and Cure provisions set forth below in paragraphs 8 - 12 below, that the action requested by the Plaintiff is required by existing law, and the Defendants have refused to take the action required by law. Such relief may not be sought after the scheduled dismissal of the litigation. Absent the presence in a pending motion of a factually-supported allegation of material breach as described above, the Court shall dismiss this lawsuit with prejudice on May 31, 2017. If the case continues beyond May 31, 2017, based upon the timely filing of a motion of material breach, the parties agree to file a joint motion requesting an expedited disposition by the Court of whether a material breach has occurred and continues. If the Court finds no material

breach has occurred and continues, the case shall be dismissed with prejudice.

8. No later than November 30, 2016, Plaintiff shall notify Defendants in writing of any issues which are believed to be in material breach of the implementation of the Plan of Compliance or the Settlement Agreement which would provide a basis to prevent dismissal on May 31, 2017, and reopen the case. Notice shall be provided to counsel of record for each of the Parties via email and U.S. Mail.

9. Defendants shall provide a written response to within 30 days of receipt of notice of material breach. Defendants' written response shall contain an outline of the action the Defendants took to investigate the issue(s), the results of the investigation and a specific plan to address the stated issue(s). If no corrective action is anticipated, Defendants' response shall include the rationale and any statutes, regulations or other foundation upon which Defendants rely.

10. If Defendants' response includes a plan of corrective action, Defendants shall provide Plaintiff with the results of their corrective action by March 31, 2017.

11. If, after the Plaintiff receives Defendants' response and results of corrective action, if any, Plaintiff believes that Defendants are not in substantial compliance with the terms of this Agreement, Plaintiff shall give Defendants notice of its intention to terminate this Agreement, continue jurisdiction of the Court, and pursue any of the relief requested in this lawsuit to counsel of record for Defendants no later than April 30, 2017.

12. No provisions of the notice-and-cure period shall apply if emergency circumstances render their application impracticable. For purposes of this paragraph, emergency circumstances affecting the plaintiff means the systemic failure of the Department of Corrections and/or the Contractor to provide constitutionally adequate mental health treatment services to

inmates housed in the inpatient mental health unit at Dade Correctional Institution which are not addressed by a Corrective Action Plan and which present an immediate and irreparable harm to those inmates.  If such emergency circumstances are present, the paintiff may bypass the notice-and-cure period and file a motion alleging material breach as required by this agrement.   For purposes of this paragraph, emergency circumstances affecting the defendants means emergent circumstances beyond the control of defendants that would prevent either the Department of Corrections or the Contractor from complying during the notice-and-cure period due to acts of nature such as hurricanes, tornados, floods, and fires, and any catastrophic destruction or national, state, or local emergency affecting Dade Correctional Institution.  If such emergency circumstances occur, the notice-and-cure provisions shall be deferred until after the emergent conditions or state of emergency has passed.

       13.      This Settlement Agreement does not address attorneys' fees.  Attorneys' fees and costs will be negotiated separately from this Agreement.  However, as part of this settlement agreement, defendants [Department of Corrections and Wexford] agree to pay the plaintiff reasonable attorney's fees and costs within a mutually agreed upon designated time after the terms of the settlement are fully executed and the case is dismissed with prejudice.  The parties agree to negotiate fees and costs at that time and if reasonable attorney's fees and costs cannot be agreed upon within sixty (60) days after dismissal, the parties will engage in mediation.  If the fees and costs are not resolved through mediation within 60 days, the plaintiff then may pursue judicial relief.  The parties agree that the district court may maintain continuing jurisdiction after dismissal of the case with prejudice for the sole purpose of determining reasonable attorney's fees and costs if the parties fail to reach agreement through negotiation or mediation.  Plaintiff agrees to provide defendants with quarterly summary billing statements for fees and costs for

defendants' review starting July 15, 2015.

14. The Parties' breach, or alleged breach, of this Agreement (or of the terms contained herein) shall not be used by any party as a basis for any further litigation other than this case.

15. Each of the signatories to this Settlement Agreement on behalf of the Defendants represent that they shall take all necessary steps to comply with the Plan of Compliance.

16. By mutual agreement in writing, the Parties may change the terms of this Agreement, including, but not limited to, the timetables for the Implementation Plan in Section III.I.2.b.

IN WITNESS WHEREOF, the parties to this Settlement Agreement have executed the same, through the signatories below:

For Plaintiff:                                          For Defendants:


_____        _____
Designee                                                Designee
DISABILITY RIGHTS FLORIDA, INC.        FLORIDA DEPARTMENT OF
                                                              CORRECTIONS

Dated:_____        Dated:_____



                                                              _____
                                                              Designee
                                                              WEXFORD HEALTH SOURCES, INC.

                                                              Dated:_____

14

**SITE VISIT PROTOCOL**
**DADE CI INPATIENT MENTAL HEALTH TREATMENT UNITS**

Exhibit A

- Three (3) day visit

- Limited to two (2) experts each side, two (2) attorneys per party, one (1) party representative each, one (1) Wexford staff member to conduct tour, Warden and security staff as is necessary to escort the group

- Questions may be asked by Experts of staff accompanying site visit group. All other interviews of staff will be conducted at a time and place designated for this purpose. All questions will be asked solely by the Experts uninfluenced by the attending attorneys or party representatives.

- Informal cell front or day room interviews with inmates may be conducted only by the Experts during site tour.

- Observe Treatment-Specific Activities: group sessions, dayroom activities, therapeutic recreation activities

    One group session will be made available for observation in each unit (East and West). Each observation will be arranged to minimize the disruption to the group session itself. (Each group session will be observed only by the two mental health experts from a distance and as unobtrusively as possible.)

- Observe Treatment Team Meetings - one observation in each unit (East and West)

- Observe medication management process

- Overview provided by designated unit staff of the initial assessment process for a new admission; questions by Experts only.

- Introduction and Exit Meetings will be conducted to make sure areas of focus determined by the Experts have been fully addressed