UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:14-cv-23323-RNS
Consolidated Case No. 1:14-cv-24140-RNS

ANDRE CHAPMAN, as Personal
Representative of the ESTATE OF
DARREN RAINEY, on behalf of the
Estate, and on behalf of Darren Rainey's
Surviving Relatives, Andre Chapman,
Renee Chapman, Deborah Johnson,
Chnieaqua Breelove and Harold Marr,

        Plaintiff,

vs.

FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the State of
Florida, CORIZON, L.L.C., an out-of-state
limited liability corporation doing business and
registered in Florida, ROLAND CLARKE,
CORNELIUS THOMPSON and JERRY
CUMMINGS,

        Defendants.

_____ /

**PLAINTIFF'S OPPOSITION TO JERRY CUMMINGS' MOTION TO DISMISS COUNT
FOUR OF THE SECOND AMENDED COMPLAINT AND OPPOSITION TO GRANT
CUMMINGS' QUALIFIED IMMUNITY TOGETHER AND INCORPORATED
MEMORANDUM OF LAW**

        Plaintiff, Andre Chapman (hereinafter "Plaintiff" or "Mr. Chapman"), by and through his

undersigned counsel, hereby files this opposition to Defendant Jerry Cummings' Motion to

Dismiss Count Four of the Second Amended Complaint and Opposition to Grant Cummings'

Qualified Immunity, filed on July 1, 2016 [ECF No. 124].

## I.     INTRODUCTION

In this case, Plaintiff's decedent, Darren Rainey ("Mr. Rainey"), died in a shower that was rigged to administer excruciatingly hot water in its small quarters. The controls of the shower were rigged so that the guard on the outside had control over the temperature of the water. Prior to Mr. Rainey's death, mental health staff and inmates had written numerous incident reports and inmate grievances about guards physically abusing inmates by starving or assaulting them and mentally abusing them due to their mental disorders. One mental health worker spoke directly to Defendant Jerry Cummings ("Mr. Cummings" or "Defendant"), the warden of Dade Correctional Institution ("DCI"), about his reports, and Mr. Cummings encouraged him to continue making reports in which he did. Those reports put Mr. Cummings on notice that the guards were violating the inmates' rights and give him an opportunity to change the custom. Nothing changed, however, and as a result, Mr. Rainey later lost his life due to abuse that he suffered at the hands of guards that worked under Mr. Cummings. Mr. Cummings now asks this Court to dismiss the case against him. His request should be denied.

In the alternative, should the Court grant Defendant's motion, Plaintiff requests that the Court allow Plaintiff an opportunity to amend the complaint accordingly.

## II.    BRIEF STATEMENT OF FACTS

On June 23, 2012, the defendant guards intentionally place Mr. Rainey in a shower as a form of punishment. The guards pass by numerous showers in the wing where Mr. Rainey is housed to take him to another wing to a specially rigged shower. As they had done on numerous occasions with several other inmates, they lock Mr. Rainey in the shower to punish him because he defecated in his cell and purportedly smeared it. Once Mr. Rainey is in the shower, a guard turns on the hot water and leaves him for an extraordinary amount of time dealing with the rising

temperature and hot steam filling the stall. Eventually, Mr. Rainey dies as a result of the extreme temperature of the water or steam. When he was found, his skin was peeling off of his body, it was noted that he had burns to his flesh and he had an elevated body temperature.

This incident of June 23, 2012 is not the first time that an inmate had been abused at DCI by a guard. George Mallinckrodt ("Mr. Mallinckrodt"), a mental health worker who was assigned to DCI from 2008 to 2011, wrote complaints of inmate abuse by DCI guards and spoke directly to Mr. Cummings concerning his reports. On or around June 28, 2011, Mr. Mallinckrodt filed a DCI incident report that another inmate, Joseph Swilling, had been physically beat and abused without justification 5 days earlier. This beating was administered by different guards other than the defendant guards here that was partially witnessed by 5 other inmates. Mr. Mallinckrodt added another incident of inmate abuse on the same incident report regarding inmate Keith Redding. Two more guards, other than the defendant guards, held Mr. Redding's arm in such a way so that one of the guards repeatedly kicked his cell door so that it banged into his arm injuring him. 3 inmates witnessed this abuse and 1 of them also filed a grievance about the incident in addition to Mr. Mallinckrodt's incident report.

Mr. Mallinckrodt eventually met directly with Mr. Cummings to discuss inmate abuse by DCI guards. Mr. Mallinckrodt first discussed the incidents involving inmates Joseph Swilling and Keith Redding. He then discussed an incident involving inmate Vince Rolle who told Mr. Mallinckrodt that "CO Perez" had refused to give Mr. Rolle a food tray at feeding time on several occasions starving him. In retaliation, Mr. Rolle attacked the guard, punching him in the face and breaking his nose. Mr. Mallinckrodt told Mr. Cummings that the guards' abuse of mentally ill inmates was making the prison unsafe for everyone, including the inmates, guards

and mental health staff. Mr. Mallinckrodt said that "[t]his was typical of incidents where [guards] would harass, taunt, instigate, torment, and agitate chronically mentally ill inmates."

Mr. Mallinckrodt told of another guard, "CO Gruben," that tormented inmate Jeffrey Scott for months telling him that he would never leave the mental health unit although the mental health providers promised him he would be released if he could control his emotions for a certain period of time. Inmate Jeffrey Scott wanted to be released badly from the mental health unit, but CO Gruben tormented him to the point where he was uncontrollably agitated and unable to control his emotions. Mr. Mallinckrodt called this an example of how DCI guards sabotage the mental health staff's treatment of inmates. Mr. Mallinckrodt told Mr. Cummings this was regular behavior by the guards.

In response to these reports, Mr. Cummings told Mr. Mallinckrodt that he had been brought to DCI out of retirement to deal with the "troubled" prison. Because he had only been there several months at that time, he claimed he was unable to address the issues in the mental health unit, otherwise known as the Transitional Care Unit ("TCU"), because he was busy with other issues in the prison. In response to Mr. Cummings request to identify the abusive guards, Mr. Mallinckrodt identified **only 1 that was not abusive**, but that **the rest were abusive to the inmates**. Mr. Cummings asked Mr. Mallinckrodt to continue to detail guards' abuses of inmates. As such, Mr. Mallinckrodt filed 2 more incident reports the very next week involving CO Gruben. CO Gruben verbally taunted inmates Walter Fyler and Daniel Medberry inciting them to respond in kind. When they did so, he wrote them up on Disciplinary Reports so that their privileges would be restricted. Within 2 months, Mr. Mallinckrodt was fired.

Mr. Cummings knew that he had inherited a troubled prison when he was assigned as the warden of DCI. He told one news reporter that, "When I got to Dade [DCI], the inmates were

not the problem.  The real problem was that the inmates weren't treated like human beings."

(*Deposed warden says Dade Correctional was a dysfunctional mess*,

http://www.miamiherald.com/news/state/florida/article3527395.html, <last visited July 3,

2015>).  Examples of the dysfunction he was aware of were security breaches where the guards

let inmates pay for privileges such as being able to move about the prison without being

monitored or supervised, or guards being listed as working in a certain area but not really being

there.  In that same article Mr. Cummings told the reporter that FDOC Assistant Regional

Director Bill Smith warned him that the mental health unit at DCI would be his downfall.  Mr.

Cummings recalled the conditions in the unit as appalling, including the rampant smell of urine

and feces, that inmates were dressed in soiled clothing and that they would beg for food, soap or

a toothbrush.  The guards would decide when and when not to feed the inmates.

Nonetheless, the longstanding policy or custom of letting the guards do as they please,

including abusing inmates, led to the abuse of Mr. Rainey on June 23, 2012. Mr. Cummings, the

warden of DCI, should have stepped in to quell guards' abuse of inmates, which would have

protected Mr. Rainey.  Instead, it was allowed to continue, Mr. Rainey was forced into a shower

far away from his cell past other working showers to a specially rigged shower where the guards

could control the water temperature, and then left him there where he collapsed and died.

Plaintiff then brought a claim for supervisory liability, Count 4 in the Second Amended

Complaint ("SAC"), against Mr. Cummings alleging, as follows.  "Prior to Mr. Rainey's death,

Defendants FDOC and/or Cummings knew about widespread abuse by correctional officers upon

inmates with mental illness on the Dade CI mental health inpatient unit."  (SAC, ¶45). "In 2011,

a psychological counselor at Dade CI reported *several instances* of physical abuse by

correctional officers on inmates in the Dade CI inpatient unit *to prison officials at Dade CI,*

*including the warden, Cummings*. The counselor indicated that the abuse included officers kicking and beating an inmate while he was restrained." (SAC, ¶46, emphasis added). "The counselor reported that abuse of inmates on the Dade CI inpatient unit by correctional officers occurred *on a regular basis*." (SAC, ¶47, emphasis added). "The counselor filed *a variety of complaints* with the Dade CI prison officials and the FDOC Inspector General's office about the abusive treatment, but never received a response." (SAC, ¶48, emphasis added). "Additionally, inmates on the Dade CI inpatient mental health unit complained to FDOC staff that officers were using the 'shower treatment' to retaliate against the most mentally ill inmates on the unit." (SAC, ¶49). "Dade CI correctional officials, including supervisors on the inpatient unit and the prison warden, Cummings, had actual knowledge of the widespread abuse of inmates on the inpatient mental health unit by correctional officers, but failed to take any steps to stop the abuse." (SAC, ¶50).

In Count Four of the SAC, titled "Supervisory Liability by Defendant Cummings", Plaintiff stated the following allegations. "Plaintiff repeats and realleges paragraphs 1 through 88 as if fully set forth herein." (SAC, ¶89). "This Count Four is brought pursuant to 42 U.S.C. § 1983 to redress violations of the Eighth and Fourteenth Amendments of the Constitution of the United States." (SAC, ¶90). "… Defendant Cummings was employed by the FDOC at Dade CI as the warden. … Defendant Cummings, as the warden and supervisor of Dade CI, had the power and authority to directly affect the terms and conditions of the employment of Dade CI officers and staff, including Defendants Clarke and Thompson." (SAC, ¶91). "… [T]he Dade CI inpatient mental health unit had a history of widespread abuse of mentally ill inmates by Dade CI officers. Defendant Cummings knew and/or should have known about the widespread abuse and the necessity for correcting Dade CI officers' conduct, but failed or refused to stop the

constitutional deprivations to Dade CI inpatient mental health unit inmates who were being abused by officers." (SAC, ¶92). "The constitutional deprivations that constitute widespread abuse, … were inclusive of, but not limited to, numerous occurrences of Dade CI officers depriving inmates of food as punishment or for retaliation against inmates, the use of excessive force against inmates and the 'shower treatment', which were obvious, flagrant, rampant, and of continued duration, and not merely isolated incidents." (SAC, ¶93). "Despite having actual or constructive knowledge of the history of widespread abuse, Defendant Cummings condoned, tolerated and through actions or inactions thereby ratified the Dade CI officers' conduct in abusing the inmates. Defendant Cummings also acted with deliberate indifference to the foreseeable effects and consequences of this widespread abuse with respect to the constitutional rights of mentally ill inmates, including Mr. Rainey, and other individuals similarly situated." (SAC, ¶94). "Defendant Cummings' refusal or failure to act was an expected, direct, causal connection that permitted or allowed the history of widespread abuse of mentally ill inmates by Dade CI officers to continue." (SAC, ¶95). "As a legal, substantial and proximate result of Defendant Cummings' actions or failure to act, Defendants Clarke and Thompson maliciously, sadistically, deliberately indifferently, recklessly, negligently and/or carelessly turned on scalding hot water in Mr. Rainey's shower in retaliation for Mr. Rainey smearing feces on his body and cell, which proximately resulted in his untimely and horrific death." (SAC, ¶96).

Therefore, Plaintiff brings a valid claim, Count Four, against Mr. Cummings for his supervisory liability, which should not be dismissed. The Court should also deny Defendant's motion that is based on qualified immunity. If this Court is inclined to grant Mr. Cummings' motion, however, Plaintiff requests this Court to allow leave to amend the SAC accordingly.

## MEMORANDUM OF LAW

**I.    THE SAC IS NOT A SHOTGUN PLEADING BECAUSE IT PROPERLY PROVIDES SUFFICIENT NOTICE TO DEFENDANT JERRY CUMMINGS AS TO THE CLAIM AGAINST HIM.**

Defendant incorrectly argues that Plaintiff's SAC must be dismissed as a "shotgun pleading" simply because it incorporates prior allegations into subsequent allegations. Defendant, however, failed to cite to one of the more recent cases to discuss this topic and which is more on-point with this case, which is the case of *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015). In *Weiland*, each of the claims in the complaint contained an introductory paragraph that read, "Plaintiff realleges and reavers the allegations of paragraphs 1–49 inclusive, and alleges further...." (*Weiland*, supra at 1318). Although such paragraphs may be indicative of a "shotgun pleading," that conclusion is not always so because "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." (*Id.* at 1320). In the *Weiland* case, however, the court reversed the district court's dismissal of the complaint stating that the complaint was sufficiently written to provide proper notice of the allegations and claims against each defendant. (*Id.* at 1325 [despite the reference to other allegations, the complaint "... does adequately put [defendants] on notice of the specific claims against them and the factual allegations that support those claims."]

Like in *Weiland*, Plaintiff's SAC adequately puts Defendant on notice of the allegations and claims against him. For instance, paragraphs 45 through 49 allege facts that mental health staff and inmates wrote reports and grievances about inmate abuse by DCI guards, including assault and refusing to give inmates food. In paragraphs 46 through 47, the complaint alleges

that the metal health counselor reported the abuses to DCI staff, including Mr. Cummings, and that the abuses "occurred on a regular basis." Based on those reports, paragraph 50 alleges that Mr. Cummings "had actual knowledge of the widespread abuse of inmates on the inpatient mental health unit by correctional officers, but failed to take any steps to stop the abuse." Subsequently, Count 4 in paragraphs 92 and 93, entitled "Supervisory Liability by Defendant Cummings", which incorporates prior allegations, goes on to allege that Mr. Cummings had knowledge of the widespread abuse by virtue of those reports. In paragraph 94, it is alleged that despite that knowledge, "Defendant Cummings condoned, tolerated and through actions or inactions thereby ratified the Dade CI officers' conduct in abusing the inmates." That paragraph goes on to allege that Defendant was deliberately indifferent to the rights of the inmates based on that knowledge. In paragraphs 95 through 96, it is alleged that Mr. Cummings did nothing to stop the abuse and his inaction was a causal connection allowing the abuse to continue that eventually led to Darren Rainey's death.

These allegations were more than sufficient to put Defendant on notice that the claim against him was for "Supervisory Liability" as stated in the title of Count 4. It is disingenuous for Defendant to argue otherwise now, especially when he does not seek a motion for more definite statement. (See, e.g., *Weiland*, supra at 1323 ["[T]his is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count. This may explain why the defendants did not move for a more definite statement under Federal Rule of Civil Procedure 12(e) or otherwise assert that they were having difficulty knowing what they were alleged to have done and why they were liable for doing it."]). Therefore, Defendant's argument that the complaint should be dismissed because it is a shotgun pleading necessarily fails because it is

abundantly clear the exact type of claim, Supervisory Liability, and of the facts that are being asserted against Defendant.

## II.    COUNT 4 OF THE SAC SUFFICIENTLY STATES FACTS TO SET FORTH A CLAIM OF SUPERVISORY LIABILITY AGAINST MR. CUMMINGS.

Sections 5 and 6 of Defendant's motion make the same argument that Plaintiff failed to plead a sufficient claim and, more specifically, a claim for supervisory liability. Because Plaintiff has sufficiently pled a specific claim for supervisory liability against Mr. Cummings, Plaintiff will oppose both of Defendant's arguments in this section.

Defendant argues that Plaintiff pled no factual allegations, with the exception of conclusory statements, to support Count 4. Then, Defendant cherry picks a few allegations that pertain to Mr. Cummings throughout the complaint, clearly ignoring all the other paragraphs that directly pertain to him, to argue again that there are insufficient facts alleged to state a claim against him. Defendant's motion to dismiss based on a failure to state a claim and/or failure to plead a claim of supervisory liability against him, however, is wholly without merit as it fails to address all of the allegations that directly pertain to Mr. Cummings by use of his name and reference.

When considering a Rule 12(b)(6) motion to dismiss, "the pleadings are construed broadly." (*See, Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir.2006)). The allegations in the complaint are also viewed in the light most favorable to the plaintiff. (*Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.1998)). Of course, "a formulaic recitation of the elements of a cause of action will not do." (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is

improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." (*Id.*).

The Supreme Court's formulation of the pleading specificity standard is that "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. (*Id.*). The standard is one of "plausible grounds to infer." (*Id.*). The rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary element. (*Id.*). It is sufficient if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible." (*Id.*).

There is no question that supervisors can be held liable under 42 U.S.C. § 1983 for their own actions or inactions in violating a plaintiff's constitutional rights. (See, *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (stating that a supervisor may be liable upon a showing of "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so."). The elements of a claim for supervisory liability under section 1983 are found in the Eleventh Circuit's Civil Pattern Jury Instructions, which states:

> [Plaintiff] must prove by a preponderance of the evidence that (1) [the defendant guards] violated [his] [Eighth and Fourteenth Amendment Rights] and (2) one of the following circumstances was present at the time [Plaintiff]'s constitutional rights were violated:
>
> * * *
>
> (b) A history of widespread abuse, meaning abuse that was obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences, put [Defendant Cummings] on notice of the need to take corrective action and [he] failed to do so....
>
> * * *
>
> An "official policy or custom" means a: (a) A policy statement or decision that is made by [Defendant Cummings]; or (b) A practice

> or course of conduct that is so widespread that it has acquired the
> force of law, even if the practice has not been formally approved.

(Eleventh Circuit, Civil Pattern Jury Instructions, 2013, Instruction 5.8).

In this case, that claim is exactly what is pleaded against Mr. Cummings. Although Defendant argues that the SAC alleges only one "isolated" instance of abuse and conclusory language without specific facts, a closer read of the SAC shows otherwise. It has already been alleged and pled that the defendant guards, Defendant Roland Clarke and Defendant Cornelius Thompson, violated Plaintiff's Eighth and Fourteenth Amendment rights when they physically abused him by placing him in the rigged shower as punishment where he collapsed and died. (See, ¶¶15, 20, 24-44; Count 3).

Next, Plaintiff sufficiently alleges "a history of widespread abuse" that put Mr. Cummings on notice, either directly or at least constructively, "of the need to take corrective action," but he failed to do so. For instance, in 2011 the mental health counselor, Mr. Mallinckrodt, "reported ***several instances*** of physical abuse by correctional officers on inmates in the Dade CI inpatient unit ***to prison officials at Dade CI, including the warden, Cummings***." (SAC, ¶46, emphasis added). "The counselor indicated that the abuse included officers kicking and beating an inmate while he was restrained." (SAC, ¶46, emphasis added). Mr. Mallinckrodt also told Mr. Cummings "that abuse of inmates on the Dade CI inpatient unit by correctional officers occurred ***on a regular basis***." (SAC, ¶47, emphasis added). "The counselor filed ***a variety of complaints*** with the Dade CI prison officials and the FDOC Inspector General's office about the abusive treatment, but never received a response." (SAC, ¶48, emphasis added). "Additionally, inmates on the Dade CI inpatient mental health unit complained to FDOC staff that officers were using the 'shower treatment' to retaliate against the most mentally ill inmates on the unit." (SAC, ¶49). Based on these numerous reports, "Dade CI correctional officials,

including supervisors on the inpatient unit and the prison warden, Cummings, had actual knowledge of the widespread abuse of inmates on the inpatient mental health unit by correctional officers, but failed to take any steps to stop the abuse." (SAC, ¶50).

Further, in Count Four of the SAC, which is specifically titled "Supervisory Liability by Defendant Cummings", Plaintiff stated more factual allegations. "Plaintiff repeats and realleges paragraphs 1 through 88 as if fully set forth herein." (SAC, ¶89). "This Count Four is brought pursuant to 42 U.S.C. § 1983 to redress violations of the Eighth and Fourteenth Amendments of the Constitution of the United States." (SAC, ¶90). "… Defendant Cummings was employed by the FDOC at Dade CI as the warden. … Defendant Cummings, as the warden and supervisor of Dade CI, had the power and authority to directly affect the terms and conditions of the employment of Dade CI officers and staff, including Defendants Clarke and Thompson." (SAC, ¶91). "… [T]he Dade CI inpatient mental health unit had a history of widespread abuse of mentally ill inmates by Dade CI officers. Defendant Cummings knew and/or should have known about the widespread abuse and the necessity for correcting Dade CI officers' conduct, but failed or refused to stop the constitutional deprivations to Dade CI inpatient mental health unit inmates who were being abused by officers." (SAC, ¶92). "The constitutional deprivations that constitute widespread abuse, … were inclusive of, but not limited to, numerous occurrences of Dade CI officers depriving inmates of food as punishment or for retaliation against inmates, the use of excessive force against inmates and the 'shower treatment', which were obvious, flagrant, rampant, and of continued duration, and not merely isolated incidents." (SAC, ¶93). "Despite having actual or constructive knowledge of the history of widespread abuse, Defendant Cummings condoned, tolerated and through actions or inactions thereby ratified the Dade CI officers' conduct in abusing the inmates. Defendant Cummings also acted with deliberate

indifference to the foreseeable effects and consequences of this widespread abuse with respect to the constitutional rights of mentally ill inmates, including Mr. Rainey, and other individuals similarly situated." (SAC, ¶94). "Defendant Cummings' refusal or failure to act was an expected, direct, causal connection that permitted or allowed the history of widespread abuse of mentally ill inmates by Dade CI officers to continue." (SAC, ¶95). "As a legal, substantial and proximate result of Defendant Cummings' actions or failure to act, Defendants Clarke and Thompson maliciously, sadistically, deliberately indifferently, recklessly, negligently and/or carelessly turned on scalding hot water in Mr. Rainey's shower in retaliation for Mr. Rainey smearing feces on his body and cell, which proximately resulted in his untimely and horrific death." (SAC, ¶96). Based on the foregoing factual allegations, Plaintiff has met his pleading requirement to sufficiently state a claim of supervisory liability against Defendant Jerry Cummings.

Alternatively, if this Court finds that Plaintiff has not met that standard, Plaintiff requests this Court to allow him to further amend the complaint in accordance with established law. Facts exist that Mr. Mallinckrodt had a specific conversation with Mr. Cummings in 2011 in which he informed Mr. Cummings of 2 separate instances of physical abuse where DCI guards unjustifiably assaulted inmates Joseph Swilling and Keith Redding. Mr. Mallinckrodt also told him that guards would verbally taunt the inmates, such as Jeffrey Scott, to sabotage mental health staff's treatment of inmates *__in the mental health unit__*. He also discussed with Mr. Cummings that guards starved inmates, including a specific instance when inmate Vince Rolle was starved and lashed out at a guard because of the starvation. Mr. Mallinckrodt told Mr. Cummings that this was an ongoing problem that made the mental health unit at DCI more dangerous than necessary. Mr. Cummings asked Mr. Mallinckrodt which guards were

committing these abuses, and he responded that all were engaging in abusive behavior except for one. When asked to continue making reports of abuse, Mr. Mallinckrodt made 2 more reports the very next week involving a guard that verbally taunted inmates to respond so he could then write up disciplinary reports against the inmates, Walter Fyler and Daniel Medberry, to restrict their privileges at DCI. According to Mr. Mallinckrodt, however, there were no changes made to the guards' abusive behavior.

Likewise, Mr. Cummings knew that he had inherited a troubled prison when he became the warden of DCI. "When I got to Dade [DCI], the inmates were not the problem. The real problem was that the inmates weren't treated like human beings," he told one reporter. (*Deposed warden says Dade Correctional was a dysfunctional mess*, http://www.miamiherald.com/news/state/florida/article3527395.html, <last visited July 3, 2015>). He also stated that FDOC Assistant Regional Director Bill Smith warned him that the mental health unit at DCI would be his downfall. Not only were conditions in the mental health unit appalling, but he also stated that inmates were dressed in soiled clothing, that they would beg for food, and that the guards would decide when and when not to feed the inmates. These facts bolster Plaintiff's claim for supervisory liability against Mr. Cummings, and, should the Court decide to grant Defendant's motion, Plaintiff should be allowed to amend the SAC accordingly.

## III.   DEFENDANT CUMMINGS IS NOT ENTITLED TO QUALIFIED IMMUNITY BASED ON CLEARLY ESTABLISHED LAW.

Defendant basically argues again that Plaintiff has failed to plead factual allegations to overcome the defense of qualified immunity. Plaintiff, however, has sufficiently pled the required factual allegations to overcome the defense. To be liable for an Eighth Amendment violation, the official must be aware of a substantial risk of serious harm to the inmates and not

take reasonable measures to alleviate that risk. (*See Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct.

1970, 1982-83 (1994)). In the Eleventh Circuit case of *Marsh v. Butler County, Ala*, 268 F.3d

1014 (11th Cir. 2001), which is similarly analogous to this case, that court cited the law with

regard to qualified immunity at the pleadings stage, as follows:

> To overcome a Rule 12(b)(6) motion based on the defense of
> qualified immunity, Plaintiffs must allege conditions that, in the
> light of the already clearly established law at the time of the
> incident, obviously amounted to cruel and unusual punishment
> under the Eighth Amendment. In the qualified immunity analysis,
> we generally first determine whether a plaintiff has stated a claim
> for a constitutional violation at all. *See Stanley v. City of Dalton,*
> 219 F.3d 1280, 1285 (11th Cir. 2000).
>     A prison official's deliberate indifference to a known, substantial
> risk of serious harm to an inmate violates the Eighth Amendment.
> *See Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 2480, 125
> L.Ed.2d 22 (1993).
>     An Eighth Amendment violation will occur when a substantial
> risk of serious harm, of which the official is subjectively aware,
> exists and the official does not "respond reasonably to the risk."
> *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128
> L.Ed.2d 811 (1994). A plaintiff must also show that the
> constitutional violation caused his injuries.
>     In *Farmer,* the Court was chiefly concerned with defining the
> level of intent required of an official to violate the Eighth
> Amendment — the subjective element of the tort; but *Farmer* also
> explained that two objective elements are part of an Eighth
> Amendment violation.
>     First, an objectively substantial risk of serious harm to prisoners
> must exist. *See Id.* at 1977. Second, once it is established that the
> official is aware of this substantial risk, the official must react to
> this risk in an objectively unreasonable manner. *See Id.* at 1983.

1028-1029).

        In this case, Plaintiff has met the pleading standard to overcome Defendant's affirmative

defense of qualified immunity. Here, as discussed above, Plaintiff has alleged facts that

established violations of the Eighth Amendment's prohibition against cruel and unusual

punishment against Mr. Cummings. The guards themselves were creating the substantial risk of

serious harm by perpetrating acts of cruel and unusual punishment against the inmates, which was reported by inmates on inmate grievances and by a mental health worker in incident reports and verbally. In 2011, almost a year prior to the death of Darren Rainey, Mr. Mallinckrodt, in addition to writing up incident reports, went directly to Mr. Cummings and notified him of inmate abuses that guards perpetrated, including guards physically abusing inmates by assaults (i.e. Joseph Swilling and Keith Redding) and starvation (i.e. Vince Rolle). He also notified Mr. Cummings during the same conversation of mental abuses that guards perpetrated against inmates (i.e. Jeffrey Scott). Mr. Mallinckrodt told him that these abuses were ***ongoing*** and ***occurred on a regular basis***. At the conclusion of their conversation, Mr. Cummings asked Mr. Mallinckrodt to continue to document guards abusing inmates, and within the next week he had written 2 more incident reports detailing intentional mental abuse to 2 more inmates (i.e. Walter Fyler and Daniel Medberry). As such, there was a custom and practice at DCI of guards abusing inmates in various ways. Mr. Cummings was directly made aware of the abuses; therefore he had direct knowledge of the abuses. Finally, per Mr. Mallinckrodt, nothing happened to change that custom – Mr. Cummings did nothing to quell the abusive practices of his guards whatsoever.

As such, just as in the *Marsh* case, it is clearly established law that a substantial risk of serious harm to inmates is a violation of the Eighth Amendment. (*Id*. at 1029). Mr. Cummings had direct knowledge of these abuses approximately 1 year before Mr. Rainey's death as a result of DCI guards' abusive behavior. Mr. Cummings then failed to respond. An alleged lack of action is unreasonable under these circumstances. (*Id*.). Moreover, Plaintiff alleged that there was a causal connection between Mr. Cummings' failure to act and the abuse and death of Darren Rainey. (See, SAC, ¶¶95-96). Therefore, Defendant is not entitled to qualified immunity. In the event that this Court is inclined to grant Defendant's motion based on qualified

immunity regarding the facts as currently pled in the SAC, Plaintiff requests this Court to allow him the opportunity to allege additional facts as detailed above regarding notice to Mr. Cummings and his failure to act to remedy the abusive acts of the guards.

## IV.    CONCLUSION.

For the reasons set forth above, Plaintiff Andre Chapman, respectfully requests that the Court deny Defendant Jerry Cummings' motion to dismiss.

Respectfully submitted,

By:  */s/ Annette Newman*

Annette Newman, Esq., Florida Bar No. 84537
**LAW OFFICE OF ANNETTE NEWMAN, LLC**
101 NE 3rd Ave., Ste. 1500
Ft. Lauderdale, FL 33301-1181
Telephone: (888) 333-5580
Email: annettenewmanesq@gmail.com

– And –

By:  */s/ Milton C. Grimes*

Milton C. Grimes, Esq., California Bar No. 59437
Iverson Matthew Jackson, Esq., California Bar No. 276541
**LAW OFFICES OF MILTON C. GRIMES, APC**
3774 W. 54th St.
Los Angeles, CA 90043
(323) 295-3023 (telephone)
(323) 295-3708 (facsimile)
miltgrim@aol.com
mattj57@hotmail.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 18, 2016 the foregoing was filed with the Clerk of Court by using the CM/ECF system and that a true and correct copy was served by U.S. Mail and/or electronic mail on all counsel or parties of record, as follows:

David Allen Boyer
Molly Jean Paris
Disability Rights Florida
1930 Harrison St., Suite 104
Hollywood, FL 33020
Phone: (850) 488-9071
Fax: (850) 488.8640
Email: davidb@disabilityrightsflorida.org
mollyp@disabilityrightsflorida.org
*Attorneys for Plaintiffs Disability Rights*

Kristen Cooley Lentz
Peter Prescott Sleasman
Florida Institutional Legal Services, Inc.
14260 W. Newberry Road, #412
Newberry, FL 32669
Phone: (352) 375-2494
Fax (352) 331-5202
Email: Kristen@floridalegal.org
Peter@floridalegal.org
*Attorneys for Plaintiffs Andre Chapman, etc., et al.*

Lisa Kuhlman Tietig
Susan Maher
OFFICE OF ATTORNEY GENERAL
The Capitol - PL01
Tallahassee, FL 32399-1050
Phone: (850) 414.3300
Fax: (850) 488.4872
Email: Lisa.tietig@myfloridalegal.com
susan.maher@myfloridalegal.com
*Attorneys for Defendants Crews and FDOC*

Devang B. Desai
GRAEBE MULLEN ANTONELLI &
DIMATTEO
420 S. Dixie Highway, 3rd Floor
Coral Gables, FL 33146
Phone (305) 667-0223
Fax: (305) 284-9844
Email: ddesai@gaebenmullen.com
*Attorneys for Defendant Wexford Health Sources, Inc.*

Gregg A. Toomey
THE TOOMEY LAW FIRM LLC
*Attorneys for Defendant Corizon, LLC*
The Old Robb & Stucky Building
1625 Hendry Street, Suite 203
Fort Myers, FL 33901
Phone: (239) 337-1630
Fax: (239) 337-030
Email: GAT@thetoomeylawfirm.com
*Attorneys for Defendant Corizon, LLC*

Milton C. Grimes
Iverson Matthew Jackson
LAW OFFICES OF MILTON C. GRIMES, APC
*Attorneys for Plaintiffs*
3774 W. 54th St.
Los Angeles, CA 90043
Phone: (323) 295-3023
Fax: (323) 295-3708
Email: miltgrim@aol.com
mattj57@hotmail.com
*Attorneys for Plaintiffs Andre Chapman, etc., et al.*

Sheridan Weissenborn
DUTTON LAW GROUP, PA
9700 S. Dixie Hwy, #940
Miami, FL 33156
Phone: (786) 871-7971
Email: sweissenborn@duttonlawgroup.com
nvallecillo@duttonlawgroup.com
*Attorneys for Defendant Jerry Cummings*


LAW OFFICE OF ANNETTE NEWMAN,
LLC
101 NE 3rd Ave., Ste. 1500
Ft. Lauderdale, FL 33301-1181
Telephone: (888) 333-5580
Email: annettenewmanesq@gmail.com
*Attorneys for Plaintiffs Andre Chapman, etc.,
et al.*

By: *{/s/ Annette Newman}*
Annette Newman
Florida Bar No. 84537