UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:14-cv-23323-RNS
Consolidated Case No. 1:14-cv-24140-RNS

ANDRE CHAPMAN, as Personal
Representative of the ESTATE OF
DARREN RAINEY, on behalf of the
Estate, and on behalf of Darren
Rainey's
Surviving Relatives, Andre Chapman,
Renee Chapman, Deborah Johnson,
Chineaqua Breelove and Harold Marr,

        Plaintiff,

vs.

FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida, CORIZON, L.L.C., an
out-of-state limited liability corporation
doing business and registered in Florida,
ROLAND CLARKE, CORNELIUS
THOMPSON and JERRY
CUMMINGS,

        Defendants.           /

CORRECT **DECLARATION OF JOHN R. SUTTON**

I, John R. Sutton, declare as follows:

1. I am John R. Sutton Esq. and I have been licensed as an attorney in Florida since 1972.

2. I am counsel for Milton C. Grimes in this federal action. I am also an

attorney of record for Andre Chapman, as Personal Representative of the Estate of Darren Rainey in the probate action.

3. I have personal knowledge of the facts contained in this declaration, and if called to testify, I could and would competently testify thereto.

4. I submit this declaration in support of "Plaintiff Andre Chapman's Opposition to Motion to Intervene (hereafter "Motion for Intervention") and "Reply of Andre Chapman to Personal Representative Joyce Anderson's Response to Plaintiff Andre Chapman's Petition for Determination and Allocation of Wrongful Death Damages" and "Reply of Andre Chapman to Linda Commons Esq.'s Response to Plaintiff Andre Chapman's Petition for Determination and Allocation of Wrongful Death Damages"

5. On July 13, 2018, at approximately 3:00 p.m., I received a telephone call from attorney Christopher Wintter who advised me he was calling on behalf of his client Linda Commons. I had never spoken to, or met him before this day.

6. Mr. Wintter demanded payment of $120,000 for attorney fees he claimed were owed to Ms. Commons plus, as I understood him, approximately $3,000.00 for reimbursement of her costs. Mr. Wintter demanded an additional $10,000 for his own attorney's fees for having to "chase down Mr. Grimes" (or words to that effect).

7. Mr. Wintter told me that if we did not agree to pay the above $133,000 (more or less) he would "screw up" the settlement (or words to that effect) which

was pending for approval by Chief Probate Judge Maria Korvick in Probate Court and set for hearing a few days later, July 19, 2018.

8. Mr. Wintter suggested there was someone out there who should have received notice of the hearing. I knew it was critically important for me to have given every interested person notice of that Petition for Approval of Settlement in the amount of Four Million Five Hundred Thousand Dollars ( $4,500,000.00).

9. I do not recall Mr. Wintter telling me who we failed to notice for the hearing. I asked him twice to put this proposal in writing and to advise who did not get notice.

10. Mr. Wintter told me if the amount demanded was not paid, he would argue we deceived the Court. He threatened the Court would scold us for deception as we did not give notice of hearing as required to a person entitled to notice. I was threatened.

11. Sutton Law Group had sent the notices of hearing to everyone we believed to have an interest.

12. I do not recall Mr. Wintter disclosing Joyce Anderson, the mother of Darren Rainey's alleged illegitimate daughter. I felt "set up "by the combination of the demand for payment and the threat to blow up the $4.5 million settlement, and that we would be scolded by the Court. The thought that I may not have given notice to a person Mr. Wintter had contacted was the catalyst for identifying who did not get notice. I discussed this with lead Probate counsel Vernita Williams

Esq. who identified, found, called, and made a visit to give notice to Joyce Anderson.

13. During our July 13, 2018 phone call I told Mr. Wintter that it would be improper for us to satisfy Linda Commons' demands in exchange for avoiding notice to a person entitled to notice. I advised Mr. Wintter that if I did what he was suggesting I would be engaged in unethical conduct.

14. I advised Mr. Wintter that he had no right to negotiate a waiver of an alleged intestate successor unknown to me. Following Mr. Wintter's phone call, I immediately contacted Mr. Grimes, Vernita Williams, my co-counsel in the probate action, and attorney Vicki Sarmiento to relay the threat made by Mr. Wintter. I later emailed Mr. Grimes, Ms. Williams, and Ms. Sarmiento a summary of the telephone call I received from Mr. Wintter.

15. On August 21, 2018, a telephonic meet and confer was held with all counsel, including defense counsel. We discussed Mr. Wintter's Motion for Intervention. During the meet and confer, I asked Mr. Wintter to acknowledge the threat he made to me on our July 13th phone call. He responded, "That was then, I have a different client now" and he did not deny it.

16. Based on the threat made to me during the July 13th phone call with Mr. Wintter, it is my belief that his "Motion for Intervention" and the "Personal Representative Joyce Anderson's Response to Plaintiff Andre Chapman's Petition for Determination and Allocation of Wrongful Death Damages" is being made for

an improper purpose, to harass, cause unnecessary delay, needlessly increase the cost of litigation; is brought in bad faith; and done for the purpose of retaliation against Mr. Grimes for not agreeing to pay Linda Commons (Wintter's client).

17. At the July 19, 2018 hearing Mr. Wintter said he had called Joyce Anderson twice. It would appear that approaching a potential client at the suggestion of a third party (Commons) was improper. Spence Payne Massington v. Phil Gerson, 483 So.2d 775 (Fla. 3rd DCA 1986).

I declare under penalty of perjury pursuant to the laws of the United States and the State of Florida that the foregoing is true and correct.

Executed this 29th day of August 2018.

_____
John R. Sutton