**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:14-cv-23323-RNS**
**Consolidated Case No. 1:14-cv-24140-RNS**

ANDRE CHAPMAN, as Personal
Representative of the ESTATE OF
DARREN RAINEY, on behalf of the
Estate, and on behalf of Darren Rainey's
Surviving Relatives, Andre Chapman,
Renee Chapman, Deborah Johnson,
Chineaqua Breelove and Harold Marr,

       Plaintiff,

vs.

FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida, CORIZON, L.L.C., an
out-of-state limited liability
corporation doing business and registered in Florida,
ROLAND CLARKE, CORNELIUS
THOMPSON and JERRY
CUMMINGS,

       Defendants.

_____ /

**OPPOSITION BY PLAINTIFF ANDRE CHAPMAN AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF DARREN RAINEY TO
"PERSONAL REPRESENTATIVE [Joyce Anderson's] MOTION TO
INTERVENE REGARDING DETERMINATION AND ALLOCATION OF
WRONGFUL DEATH DAMAGES"**

## I. <u>INTRODUCTION</u>

The motion to intervene filed by attorney Christopher Wintter on behalf of Joyce Anderson[1] as Personal Representative of the Estate of Daralyn Joyce Anderson is untimely, without merit, and misleading on the facts and law.  Plaintiff, Andre Chapman as the Personal Representative of the Estate of Darren Rainey, has complied with all the requirements imposed on him by this Court and by the Probate Court.  Following approval of the settlement of this action by Probate Judge Maria Korvick, Mr. Chapman signed a Release on July 30, 2018, as authorized and ordered by Korvick's Order dated July 24, 2018.[2]  [Anderson Intervention, Exhibit "C" – Order, Dkt. #318-3).  Defendants have not paid the settlement of $4,500,000 because of the actions of Mr. Wintter, his other client Linda Commons, and now his new client, Joyce Anderson.

In the 3 ½ years of active and arduous litigation that culminated with a successful settlement on behalf of Plaintiffs Andre Chapman and Renee Chapman, Defendants never challenged the standing of Andre Chapman and Renee Chapman.  Defendants rightfully did challenge standing of *non-blood* relatives of Darren Rainey, and those *non-blood* relative Plaintiffs were dismissed.  Defendants never raised that the Estate of Daralyn Anderson—Rainey's deceased illegitimate daughter who died with no lineal descendants—was an indispensable party.  Four experienced defense firms and their attorneys never raised these issues because they are knowledgeable about Florida law, including Fla. Statute §768.24, and understood that these are non-issues and to raise them would be frivolous.   Unfortunately, that cannot be said for the Pintervenor.

---

[1] Joyce Anderson is the mother of deceased daughter Daralyn Joyce Anderson.  We refer to the moving party as "Anderson" to avoid the confusion created by Mr. Wintter who refers to Anderson throughout his motion as the "Personal Representative" without distinguishing her from Personal Representative Andre Chapman who opposes this motion.

[2] Andre Chapman signed a Release on July 30, 2018, settling this action and providing for payment of the settlement funds to Sutton Law Group Trust Account.

## II.   FACTUAL SUMMARY

1. The case is a consummated settlement between The Estate of Darren Rainey and survivors Andre Chapman and Renee Chapman (Decl. of Vicki Sarmiento, Exhibit "1" – signed Release).

2. The case settled after 3 ½ years of litigation by Andre Chapman and Renee Chapman as named Plaintiffs.

3. Defendants never challenged standing by Andre Chapman or Renee Chapman as survivors for wrongful death damages.

4. Darren Rainey died in prison on June 23, 2012.  He had no assets.

5. Daralyn Anderson died on March 6, 2013, at the age of 29.

6. Daralyn Anderson received no support or services from Mr. Rainey during the eight months she outlived Rainey, nor does the Anderson intervention motion claim she did.

7. Darren Rainey commenced his prison sentence on February 9, 2012 and was sentenced to a two-year prison term.  He would have been in prison during the eight months Daralyn Anderson outlived him.  (Decl. of Vicki Sarmiento, para. 7).

8. Joyce Anderson told attorney Vernita Williams she was aware of a pending case regarding the death of Darren Rainey but that she did not want to be involved or know any details.  (Decl. of Williams, paras. 15-16, Dkt.; Anderson Motion, Exh. "H" at Dkt. #318-8, page 4).

9. Up until August 8, 2018, Joyce Anderson never filed a claim, a lawsuit, opened an estate, or did anything to assert any alleged rights by her deceased daughter Daralyn Anderson to anything related to Darren Rainey's death.

## III.  TRUE MOTIVATION BEHIND THE MOTION

By their Motion, Mr. Wintter now by way of Joyce Anderson, seeks to interfere with a consummated settlement for an improper purpose and in retaliation for Plaintiff's counsel not acquiescing to a threat for payment made by Mr. Wintter on behalf of Commons before he represented Joyce Anderson.  Specifically, on July 13, 2018, six days before the July 19 hearing on Andre Chapman's Petition to Approve the Settlement

in the Probate Court, Mr. Wintter telephoned John Sutton and threatened to interfere with approval of the settlement if he was not paid a total of $133,000.  Mr. Wintter was demanding payment of $123,000 for Commons and an additional $10,000 for himself for having to "chase down Mr. Grimes."  If payment was not made, Mr. Wintter threatened he would "screw up" the settlement by informing Judge Korvick of the existence of Joyce Anderson[3] whom he alleged was the sole intestate successor and entitled to all of the proceeds of the settlement.  (Decl. of John R. Sutton, paras. 5-10, 12).  Mr. Wintter did not represent Joyce Anderson at that time, nor did there exist an Estate of Daralyn Joyce Anderson in any probate court.  Mr. Sutton refused to acquiesce to this threat because to do so would be unethical and he told Mr. Wintter that he (Wintter) had no right to negotiate a waiver of any alleged intestate successor unknown to Mr. Sutton.  (Decl. of John Sutton, paras. 13, 14).   Mr. Sutton informed Milton Grimes, Vicki Sarmiento, and Vernita Williams of the threat the same day, by telephone and later by email.  (Decl. of John Sutton, para. 14; Decl. of Vernita Williams, paras. 9-12; Decl. of Vicki Sarmiento, para. 12).

Two days before the hearing, on July 17, Mr. Wintter carried through with his threat and filed an objection to settlement approval entitled, "Linda Commons' Objection To Petition To Approve Wrongful Death Settlement And Deposit Funds Into Restricted Depository" ("Commons Objection").  (Decl. of Vernita Williams, para. 13, Exhibit "1"). In the Commons Objection, Mr. Wintter raised the issue of Joyce Anderson as well as Commons' alleged rights to attorney's fees and costs in the sum of $123,991.42.  They continue to obstruct the settlement by filing Notices of Appeal of Judge Korvick's Order on behalf of Commons and Estate of Daralyn Joyce Anderson.

On August 21, 2018, in a conference call with defense and plaintiff counsel, Mr. Sutton asked Mr. Wintter to acknowledge his threat of July 13.  Mr. Wintter responded,

---

[3] Daralyn is alleged to be the illegitimate daughter of Darren Rainey.  She was 28 years old when Mr. Rainey died, and she died about eight months after he did.  The Estate of Daralyn Anderson is really synonymous with Joyce Anderson because Daralyn died unmarried and without children and grandchildren. Daralyn's intestate heir is Joyce Anderson.

"that was then… I have a different client now" and did not deny it.  (Decl. of John Sutton, para. 15; Decl. of Vernita Williams, para. 28; Decl. of Vicki Sarmiento, paras. 13, 14).

## IV.   THE MISINFORMATION IN ANDERSON'S "BACKGROUND" SECTION OF MOTION TO INTERVENE

● The Motion to Intervene falsely alleges that "Andre Chapman knew or should have known that Darren Rainey had a daughter who survived him at the time of his death, knew or should have known that she was the decedent's sole survivor under the Florida Wrongful Death Act, and knew or should have known that she was his only intestate heir."  (Motion, p. 3, para. 5).   The motion also alleges the "Petition to Approve Wrongful Death Settlement" filed in the probate court "falsely asserted that Andre Chapman and Renee Chapman are the persons entitled to proceeds of the lawsuit pursuant to Florida's intestacy laws."  (Motion, p. 3, para. 6).

First, by the time Mr. Chapman filed this federal action in 2014 for violation of his brother's civil rights under 42 U.S.C. §1983, Daralyn Anderson (the alleged illegitimate daughter of Mr. Rainey) was, herself,  dead.[4]  She died on March 6, 2013, eight months after Mr. Rainey died.  Daralyn Anderson left no children or grandchildren; Mr. Rainey was unmarried, leaving no spouse or will; and his parents were deceased.  Under the laws of intestate succession, the "intestate heirs" are his brother and sister Andre Chapman and Renee Chapman (Fla. Stat. §732.103(3)).[5]  The Estate of Daralyn Anderson is not a *living person* and, therefore, not an "intestate heir."

---

[4] The Intervention Motion seeks to introduce documents establishing paternity by Court Order for Child Support, however, these documents are without authentication and without leave of Court for judicial notice.  Plaintiffs reserve their right to raise all relevant objections, including but not limited to authentication.

[5] **732.103   Share of other heirs.**  The part of the intestate estate not passing to the surviving spouse under s. 732.102, or the entire intestate estate if there is no surviving spouse, descends as follows:

   (1)   To the descendants of the decedent.

   (2)   If there is no descendant, to the decedent's father and mother equally, or to the survivor of them.

   (3)   If there is none of the foregoing, to the decedent's brothers and sisters and the descendants of deceased brothers and sisters.

Moreover, at the time of his death, it is undisputed Mr. Rainey had no assets, thus nothing to pass down to, or vest in the estate of, his alleged illegitimate daughter, Daralyn.  Even now, Judge Korvick ruled that "the $4,500,000…is not an estate asset, but rather the proceeds of a wrongful death settlement" in this federal action.  (Dkt. #318-3, page 1).

More importantly, once she died, any right to recovery she might have had was limited by Fla. Stat. §768.24 to loss of support and services, *if any,* for the eight months she outlived Mr. Rainey.  As explained below, that amount would be zero because she was not a minor and had Mr. Rainey would have been incarcerated during the eight months Daralyn outlived him.

● Anderson knew about the July 19 hearing to approve the settlement in probate court contrary to false claims in the motion.  (Motion, page 3, para. 7).  Judge Korvick approved the settlement with full knowledge of the existence of Joyce Anderson as follows: (1) Mr. Wintter specifically raised and argued the issue of Joyce Anderson at the hearing, objecting to approval of the settlement, and proclaiming Anderson to be the sole intestate successor entitled to all of the settlement proceeds as the mother of her deceased daughter, Daralyn; (2) Mr. Wintter also raised and argued the issue in the Commons Objection filed before the hearing.[6]  (Decl. of Vernita Williams, Exh. "1").  In fact, Judge Korvick took the extra step of taking *sworn testimony* from both Vernita Williams and Mr. Wintter about the existence of Joyce Anderson and notice to her to appear at the hearing, and about Ms. Williams' efforts in a face to face meeting with Joyce Anderson to convince her to participate in the hearing either in person, or by calling in to the hearing, or by having Judge Korvick call her during the hearing.  Mr. Wintter also advised the court, he too, had spoken to Joyce Anderson before the hearing.  When asked by Judge Korvick if Mr. Wintter represented Joyce Anderson, he said, "No." (Decl. of Vernita Williams, para. 16-19).

---

[6] Mr. Wintter did not represent Joyce Anderson or the estate of Daralyn Anderson at that time. He represented Commons who shockingly objected to the approval of the settlement obtained by Plaintiff, a former client for whom she provided legal services at the direction of Milton Grimes.

Judge Korvick's Order stated in this respect, **"This Court received testimony at the hearing on July 19, 2018, that Joyce Anderson, mother of Daralyn Anderson, refused to participate in any way in Court proceedings."**  (Dkt. 318-3, page 1).

● The Petition for Determination and Allocation of Wrongful Death Damages (Dkt. #314) filed by Mr. Chapman in this action was not a breach of fiduciary duty to Daralyn Anderson's estate as alleged in the Motion to Intervene.  (Motion, Dkt. 318, p. 5, para. 11).   Mr. Chapman was ordered by Judge Korvick to file such petition in this court having determined the settlement proceeds were not an asset of the Estate of Darren Rainey.  (Dkt. #318-3, p.1).

● Mr. Wintter falsely alleges that his client is unaware of the terms of the settlement.  (Motion, Dkt. 318, page 2, para. 4). Prior to his filing of the Motion to Intervene, defense counsel Sheridan Weissenborn emailed the Release signed by Andre Chapman to Mr. Wintter while other defense counsel and plaintiff's counsel were on conference call to "meet and confer" about the Motion to Intervene.  He read it while all counsel were on the call.  (Decl. of Vicki Sarmiento, paras. 9-11, Exhibit "1" – signed Release).

V. <u>ARGUMENT</u>

   A.    <u>THE MOTION TO INTERVENE AS OF RIGHT FAILS TO SATISFY THE NECESSARY REQUIREMENTS AND MUST BE DENIED</u>

As personal representative of the Estate of Daralyn Anderson, Joyce Anderson purports to intervene as of right under F.R.C.P. 24(a) in this civil rights action which was settled nine months ago for $4,500,000, and which the Court deemed "administratively closed."  Anderson does not meet the requirements to intervene and must be denied.

The determination of whether intervention as of right is proper is a multiple step process.  A party must show that: (1) the motion is timely; (2) the party has an interest relating to the property or transaction which is the subject of the action, and if so; (3) whether the party is so situated that disposition of the action, as a practical matter, may impede or impair [her] ability to protect that interest; and (4) the party's interest is represented inadequately by the existing parties to the suit.  *Chiles v. Thornburgh*, 865

F.2d 1197, 1213 (1989).   Only if Anderson establishes each of the four requirements may the Court allow her to intervene.  *Id.*

### 1.    The Motion is Not Timely

In determining whether a motion to intervene is timely, the Court must consider (1) the length of time during which the would-be intervenor knew or reasonably should have known of her interest in the case before she petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as she knew or reasonably should have known of her interest; (3) the extent of prejudice to the would-be intervenor if her petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.  *Id., citing U.S. v. Jefferson County*, 720 F.2d 1511, 1516 (1983).

#### (a)    Anderson Knew about the Lawsuit and Sat On Any Rights Her Deceased Daughter May Have Had

##### (i)  Anderson Knew About the Case and Did Nothing

Anderson falsely claims that Andre Chapman and his attorneys … "did not notify Joyce Anderson about the existence of the wrongful death lawsuit, and did not take any steps to ensure that Daralyn Joyce Anderson's estate, the intestate beneficiary of Darren Lee Rainey and his sole survivor, would have the opportunity to participate in the lawsuit or even be notified of it."  (Motion, p. 12).  In fact, Joyce Anderson knew about the lawsuit, and if anybody had an obligation to safeguard any possible interests of deceased daughter Daralyn Anderson, it was her mother.  (Decl. of Vernita Williams, para. 15). She could have opened an estate for her daughter when she found out about the lawsuit, or at the very least sought the advice of counsel to see what rights her deceased daughter might have to any eventual recovery from the lawsuit.  She did neither until August 2018.

As an excuse for her failure to act, Anderson claims "the event which triggered the necessity to intervene in these proceedings," was the "recent" "improper request by Plaintiff Chapman for a determination that Andre and Renee Chapman are the lawful recipients of the proceeds of the lawsuit…"  (Motion, p. 12).   She claims she was only

appointed the personal representative of her daughter's estate "on August 8, 2018, and only recently learned of the Estate of Daralyn Anderson's interest in these proceedings due to the deliberate breach of fiduciary duty of Plaintiff Chapman and his attorneys to exclude Daralyn Joyce Anderson's estate from these proceedings and from participating in the probate proceedings relating to Mr. Rainey." (Motion, pages 11-12).

       Anderson relies on the legal fiction that since the Estate of Daralyn Anderson did not exist until August 2018, and she was only appointed the personal representative of the estate on August 8, 2018, then she can pretend she could not have known, or had any knowledge about the possible rights of her daughter's estate to any recovery from the wrongful death action, until this time. Opening the Estate of Daralyn Anderson does not allow Joyce Anderson to circumvent the statute of limitations. As the court held in *Walton for Estate of Smith v. Florida Department of Corrections*, 2018 WL 1393520 at *4, "....it would be a "perversion of the discovery rule to permit the decedent's representative a 'fresh start' at the statute of limitations when the decedent had immediate notice of all facts necessary to bring a lawsuit." (citations omitted).

       Anderson reliance on *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278 (11th Cir. 2017) is an apples to oranges comparison. She relies on *Salvors* to suggest that a motion to intervene can be made even *33 years* after a case is commenced and still be timely. *Salvors* involved an on-going treasure hunt case not a §1983 wrongful death action with finite statute of limitations, which have long ago expired for Joyce Anderson as well as for the Estate of Daralyn Anderson.

       In *Salvors,* the Court of Appeal reversed the denial of a motion to intervene brought by Gold Hound. *Salvors* involved buried treasure found off the coast of Florida over 33 years ago by the plaintiff. A court case was filed at that time because of multiple claims to the treasure. The court determined that until all of the treasure was recovered, the case would remain open, and each year salvors would have a right to claim ownership of the treasure they found the previous year by participating in "distribution hearings" scheduled by the court. Gold Hound, the intervenor, was a company established in 2008 who worked on some treasure hunts with the plaintiff for a number of years, but later ended their relationship on bad terms. Gold Hound claimed the plaintiff stole its

treasure-hunting intellectual property software and was making exclusive claim to treasures found in 2014 to which the intervenor claimed 50% ownership, and plaintiff disputed it.  The Court determined that Gold Hound had no knowledge of its need to intervene until the September 15, 2015, order setting the date of the "distribution hearing" for the 2014 recovered treasures and where plaintiff claimed 100% of it.  Gold Hound filed its motion two weeks after the order issued, and the Court of Appeal deemed it to be timely.  (See *Salvors* at 861 F.3d 1278, 1294 (11th Cir. 2017)).

*Salvors* does not support Anderson's argument that since her daughter's estate did not "exist," she could pretend not to know of the estate's interest in this litigation "until recently."  Nor does it support the implication by Anderson that a §1983 wrongful death case could be 6 or umpteen years old and still have a timely motion to intervene.  If that were true, every §1983 wrongful death action would be susceptible to intervention beyond the statute of limitations by someone simply opening an estate.  Nowhere in *Salvors* does the Court support such a ridiculous proposition.

It was not Andre Chapman's or his attorney's obligation "to open an estate for Daralyn Anderson," "to seek damages on her behalf," or "to give Daralyn's estate an opportunity to participate" as is argued in the Motion.  (Motion, Dkt. 318, p. 13).  Daralyn was dead when the action was filed.

Moreover, Daralyn's recovery in any potential wrongful death action was drastically limited by Fla. Stat. §768.24 once she died as discussed later in this brief.  Andre Chapman's only obligation under §768.24 would have been to pay the personal representative of the Estate of Daralyn the proven amount for lost support or services for the eight month time frame, if it existed, which it does not.

### (ii)  This Case Received Enormous Media Coverage

Joyce Anderson admitted to Vernita Williams that she knew about the lawsuit involving Darren Rainey's death.  Even without this admission, Ms. Anderson would have to be living under a rock not to have seen the print, TV, and online media coverage of this story and this case from the Miami Herald, the Washington Post, the Huffington Post, CBS, and numerous other Florida media outlets.  Darren Rainey died on June 23, 2012.  Thousands of results appear on a Google search of Darren Rainey dating back to

May of 2014 detailing the grisly details of his death.  A Wikipedia page dedicated to "Death of Darren Rainey" exists and it was created in May 2015.   It is certainly reasonable to assume Joyce Anderson knew of Darren Rainey's death and the existence of the litigation well before August 2018.

Plaintiff understands that knowledge of the existence of the pendency of a case is not relevant to the issue of whether the motion is timely, the question is when the movant first knows of his/her interest in the case.  *Bodden v. Cole*, 2012 WL 12895740 *2 (U.S.D.C. M.D. Florida 2012) citing *Stallworth v. Monsanto*, 558 F.2d 257, 265 (5th Cir. 1977).  First, no one prevented Joyce Anderson from seeking legal advice or taking legal action for any rights that her deceased daughter might have from the wrongful death of Darren Rainey after news reports of his horrific death started flooded the air, print and online media in 2014 and 2015.  Second, the Anderson Intervention Motion does not cite any legal authority that exempts the proposed intervenor from the applicable statute of limitations, namely Fla. Statutes §§95.11(3)(a) and 95.11(4)(d).    Even after Mr. Wintter and Ms. Williams both contacted Joyce Anderson prior to the July 19 hearing to inform her about the petition and hearing to approve the settlement, she did not want to be involved.  Anderson had an opportunity to investigate her deceased daughter's rights after she learned about the wrongful death lawsuit.  Instead, Joyce Anderson did nothing. The motivation for Anderson's new-found interest in this action that is now settled whereby she seeks to garner all the wrongful death damages for herself is suspect on its face.

For the reasons stated, this factor weighs against timeliness.

**(b)     The Prejudice to the Parties in this Action is Massive**

This case was settled nine months ago after 3 ½ years of arduous litigation by Andre Chapman and Renee Chapman, who settled their claims as Darren Rainey's survivors.  Incredibly, Anderson argues there will be no prejudice to the existing parties because she is "not asking the Court to disapprove the settlement agreement the parties have reached in its entirety…" and "is not seeking to place the case in a position where it would need to be tried and all of the parties' efforts to settle the matter have been for nought."  (Motion, p. 15).

Mr. Wintter has the audacity to say that Anderson is "not asking the Court to disapprove the settlement" when they have already appealed the approval of the settlement in state court. On August 22, 2018, Mr. Wintter filed a Notice of Appeal of Korvick's Order on behalf of the Estate of Daralyn Anderson. As if that were not enough, he filed an additional Notice of Appeal on behalf of Commons, an attorney who sees nothing wrong with interfering with the consummated settlement of her former clients.

Anderson and her counsel's unabashed dual track manipulation of the court system is repugnant. Plaintiff is prejudiced by the obstructionist actions of Anderson and her attorney. Defendants have not and will not release any part of the $4,500,000 settlement because Mr. Wintter, Anderson, and Commons are working every angle to sabotage its approval and distribution. After the Probate Court approved the settlement, Mr. Wintter was asked several times by defense and plaintiff's counsel if he was going to object to the settlement. His stock answers were "I haven't done the research" and "I don't know" or "Maybe not, but with conditions." The straight answer came when the Notices of Appeal were filed and the prejudice to Plaintiff herein became massive.

In addition to blocking distribution of the settlement proceeds, Mr. Wintter and his clients are creating opportunity cost losses in terms of lost interest and the like, an economic loss that is calculable and actionable. Defense counsel will not release the money without a court order which protects them from any repercussions for doing so.

Finally, Anderson claims the prejudice to the Plaintiffs Andre and Renee Chapman is nonexistent because they were never entitled to recover any wrongful death damages on behalf of their brother anyway. (Motion, p. 16). Andre Chapman brought this action for violation of his brother's civil rights under 42. U.S.C. §1983 in 2014. Daralyn had long since passed away. Andre and Renee are the only living intestate heirs of Mr. Rainey. Fla. Stat. §732.103(3).

For the reasons stated, this factor weighs against timeliness.

### (c)      There is No Prejudice to the Moving Party

On the other hand, there is no prejudice to the Estate of Daralyn Anderson if the motion is denied. Anderson, a one-time girlfriend of Mr. Rainey, seeks to claim the

entire $4,500,000 settlement for herself even though her deceased daughter left no lineal descendants (i.e. children or grandchildren).

More importantly, the Estate of Daralyn Anderson is entitled to nothing from the proceeds of the settlement because of Fla. Stat. §768.24 as discussed in detail under the second requirement for a motion to intervene below. In *Bodden*, on a motion to intervene, the Court determined on the issue of prejudice to the proposed intervenor, "[I]t does not appear [the moving party] has any interest in the instant litigation as she does not stand to inherit any proceeds which may be recovered in this action…. [A]ccordingly, this factor weighs against finding her motion timely filed." *Bodden*, supra, at *3.

For the reasons stated and similarly to *Bodden*, this factor weighs against timeliness.

### (d)    Unusual Circumstances Militate Against Timeliness

● Anderson claims "unusual circumstances" in favor of timeliness of the motion are that: Andre Chapman and his attorneys "never opened an estate for Daralyn Anderson . . . never notified Anderson about the wrongful death lawsuit and Daralyn's right to recover . . .;" and "Andre Chapman as personal representative had a duty to recover for Daralyn and her estate" but is claiming "all the proceeds of the lawsuit for himself." Anderson further claims Andre Chapman breached his fiduciary duties to the estate of Daralyn for these reasons. (Motion, Dkt. # 318, p. 12).

In Florida, the personal representative is the party who seeks recovery of all damages caused by the injury resulting in death for the benefit of the decedent's survivors and for the estate. Fla. Stat. §768.20. The statute, therefore, requires a single action brought by a personal representative to recover damages for all beneficiaries under the act. By requiring the personal representative to bring a single action, the statute eliminates the potential for competing beneficiaries to race to judgment, preferential treatment of one or more beneficiaries in the disposition of their claims and, most significantly, multiple claims and lawsuits against the wrongdoer. *Funchess v. Gulf Stream Apartments of Broward County, Inc.,* 611 So.2d 43, 45 (Fla. 4th DCA 1992).

Andre Chapman, as the duly appointed personal representative of the estate of his brother, had no obligation to open an estate for a deceased alleged illegitimate daughter who was 28 years old when Mr. Rainey died, and left no children or grandchildren.  He had no obligation to notify Joyce Anderson, who was never married to Mr. Rainey, had no established relationship with Mr. Rainey, and at most gave birth to his illegitimate daughter.  He was required to bring a single action which he did and obtained an incredible settlement in the process.  He has breached no fiduciary duties to anybody.  He has not even received the money, must less distributed it.  Moreover, a personal representative has the authority, without court approval to "satisfy and settle claims" including a claim for wrongful death.  Fla. Stat. 733.612(24).[7]

● On the other hand, Plaintiff alleges the "unusual circumstances" which militate *against timeliness* are compelling.  The machinations of Mr. Wintter as he engages in a dual attack on the settlement proceeds (probate and federal court), and representing different claims to the proceeds (Daralyn's estate and Commons' attorney fees), are blatant retaliation for Mr. Sutton's refusal to succumb to his threat of interfering with the settlement unless Plaintiff paid him $133,000.

It is also an unusual circumstance that Mr. Wintters got his hands on a draft of a 73-page Third Amended Complaint which was prepared by Commons for this case, but never filed.  This is Plaintiff's former attorney disclosing work product in an effort to sabotage the settlement and to support an argument that Plaintiff knew about Daralyn and that she had a viable claim, but never opened an estate or represented her interests.  There is no valid inference to be drawn from an unfiled draft of a pleading which was fraught with legal issues and rightfully objected to by Defendants.  (Decl. of Vicki Sarmiento, para. 10).  Certainly, any attorney knowledgeable in litigation of wrongful death actions would know that Fla. Stat. §768.24 would severely limit if not outright exclude any recovery for an alleged deceased daughter.  A knowledgeable attorney would know about

---

[7] However, a personal representative may petition for probate court approval, the granting of which absolves the personal representative of personal liability for the settlement.  Fla. Stat. §733.708.  Plaintiff Andre Chapman took the extra step of getting probate court approval even though he did not have to do so.

*Florida Clarklift, Inc. v. Reutimann*, 323 So.2d 640 (1975), clearly holding a survivor who dies before final judgment is not entitled to recovery for pain and suffering for the time the survivor lived. Thus, Daralyn's estate would not be entitled to recover any non-economic pain and suffering for the eight months Daralyn lived beyond Rainey's death, but would be limited to economic damages for loss of support and services for only the eight months, if such damages existed. Further, the mother of decedent's deceased daughter would have no standing under Federal law because no federal Court has recognized standing for wrongful death damages by a third person who is wholly unrelated to the decedent and who is asserting standing as the birth mother to a deceased illegitimate daughter of Mr. Rainey.

The unscrupulous motivation behind the filing of this motion militates against a finding of timeliness. For the reasons stated, this factor and the other three weigh in favor of a finding that the motion is not timely.

### (2)    The Estate of Daralyn Anderson Does Not Have an Interest Relating to the Property or Transaction Which is the Subject of the Action – Fla. Stat. §768.24

Daralyn Anderson died on March 6, 2013. At the time of Daralyn's death, the Estate of Darren Rainey was not even in existence, and the lawsuit had not been filed. In fact, Daralyn died over a year *before* the federal action was filed by Andre Chapman for violation of his brother's civil rights under 42 U.S.C. §1983 in 2014. Fla. Stat. §768.24 limits any right to recovery the Estate of Daralyn may have had.

The Florida Wrongful Death Act as revised in 1972 merged the survival action for personal injuries and the wrongful death action into one lawsuit. The Act eliminated claims for pain and suffering of the decedent from the time of injury to the time of death; however, the decedent's close surviving relatives were allowed recovery for their personal pain and suffering. The philosophy of the Act was to afford recovery for this element of damage for the living rather than the dead. *Martin v. United Security Services, Inc.*, 314 So.2d 765 (Fla.1975).

Consistent with this stated purpose, the Wrongful Death Act in §768.24 provides:

"768.24. **Death of a Survivor Before Judgment.** A survivor's death before final judgment shall limit the survivor's recovery to <u>lost support and services to the date of his or her death</u>. The personal representative shall pay the amount

recoverable to the personal representative of the deceased survivor." (Emphasis added).

Florida Law Revision Commission noted in its recommendations, ". . . the dead are beyond compensation for either physical or mental suffering." (See Florida Law Revision Commission, Reconsideration & Report on Florida's Wrongful Death Statute, December 1969, pp. 41-42). Fla. Stat. §768.24 limits the damages of a survivor who dies prior to entry of a final judgment in a wrongful death action to purely economic damages. (See also, 6 *Fla. Prac., Personal Injury & Wrongful Death Actions,* §21:3 (West 2017-2018 ed.). In addition, and perhaps more importantly, the survivors' estate may not be entitled to seek compensation for the survivors' suffering. (*Id.*).

In *Florida Clarklift, Inc. v. Reutimann,* 323 So.2d 640 (1975)), the Court held that the Wrongful Death Act permitted recovery of lost support and services in favor of the deceased child's surviving parent up to the date of death of the surviving parent, but did not permit recovery for mental pain and suffering of that parent during the same period of time, where the parent died prior to final judgment [in *Clarklift*, son was killed by negligence of Clarklift driver, leaving his mother as his sole surviving heir; she died a few months later; the estate of son filed a lawsuit against Clarklift and, among other things, sought mental pain and suffering damages of the mother for the few months before her death - these were denied].

Assuming for the sake of argument, that Daralyn was the biological daughter of Mr. Rainey, she died "before final judgment" (in fact, before this lawsuit was even filed) outliving Mr. Rainey by only eight months. Thus, any recovery for the wrongful death of Daralyn's "father" would be limited to "loss of support and services to the date of her death." Any other recovery right she may have had under Fla. Stat. §768.21 disappeared the moment she died, and her estate cannot now purport to claim "all of the settlement proceeds" on her behalf.

In addition, Mr. Rainey's Estate had no assets when Daralyn died and currently has no assets because the Judge Korvick ruled that the settlement proceeds in this case are NOT an asset of Mr. Rainey's Estate.

The only amount Mr. Chapman as personal representative of the estate of Darren Rainey would have to give up to the Estate of Daralyn Anderson would be for "lost support and services." Daralyn was 28 years old when Mr. Rainey died. She died eight months later on March 6, 2013. She had no children or grandchildren. Mr. Rainey commenced his prison term in February 2012 and was sentenced to two years in prison. (Decl. of Vicki Sarmiento, para. 7).

If he had lived he would have been in prison until February 2014 by which time Daralyn would have been dead.  By virtue of his incarceration, Mr. Rainey did not and could not have provided Daralyn with support or services for the eight months she lived beyond him, nor do the moving papers suggest that he did.  Thus, the estate of Daralyn is entitled to nothing.

Prior to the parties' meet and confer telephone conference on August 21, 2018, Mr. Wintter had circulated a copy of a draft of his motion to intervene to all counsel.  He was asked why he did not address in the motion the obvious limitation to recovery by his client of Fla. Stat. §768.24.  He responded that he acknowledged the limitation of 768.24, but he was relying on "*Brunson v. McKay*" to somehow recover all of the proceeds of the settlement for the estate of Daralyn.

Indeed, the Motion to Intervene cites *Brunson,* 905 So.2d 1058 (Fla. 2nd DCA 2005) in footnote 1 but only for the proposition that the definition of "survivors" in the Fla. Wrongful Death Act includes "adult children."  (Motion, Dkt. #318, p. 8, FN 1).  The issue here, however, is not whether Daralyn Anderson had a right of recovery under the Fla. Wrongful Death Act as an "adult child" (assuming she was Mr. Rainey's illegitimate daughter).  The issue is that once she died "before final judgment," she lost any right of recovery she may have had as an "adult child" of Mr. Rainey, except loss of support and services for the eight months she outlived him per Fla. Stat. §768.24.  As explained above, that amounted to zero.

The moving party has no interest in the settlement proceeds, and the exclusion of any discussion of Fla. Stat. §768.24 in the Motion to Intervene is telling and fatal to the motion.

This factor weighs in favor of denying the motion.

### (3)   The Estate of Daralyn Anderson Has No Interest Such that Disposition of the Action May Impede or Impair Her Ability to Protect Such Interest

Since the Estate of Daralyn Anderson has no interest in the settlement proceeds for the reasons previously stated, disposition of the action will not impede or impair her ability to protect an interest.  This factor weighs in favor of denial of the motion.

### (4)   The Interests of the Estate of Daralyn Anderson Are Adequately Represented by the Existing Parties

As explained above, the Estate of Daralyn Anderson's recovery in any potential wrongful death action was severely limited by Fla. Stat. §768.24 once she died.

Assuming she was Mr. Rainey's daughter, her estate's only claim would have been for loss of support and services for the eight months she outlived Mr. Rainey which was zero.   Had Mr. Rainey not been killed, he would have been serving his two year prison term during those eight months

Andre Chapman has not breached any fiduciary duty he may have had to the estate of Daralyn Anderson because there is no money to be distributed to her estate because of Fla. Stat. §768.24.  Even if the estate of Daralyn Anderson did have an interest in this action, Mr. Chapman as personal representative has a duty to seek the maximum damages and would therefore adequately represent the interests of Daralyn Anderson, if any existed.  Mr. Chapman has more than met his duty by securing a $4,500,000 settlement in the case.

In finding against the moving party on this factor, the Court in *Bodden* determined, "[P]laintiff in the instant case, as the administrator of her father's estate, has a duty and a personal interest to seek the maximum damages and will therefore, adequately represent [the moving party's] interests, *if any exist…"* (Emphasis added). *Bodden*, supra, at *4 [citing *Boggess v. Price*, 2005 WL 1385943, *2 (6th Cir. 2005) – Court denied motion to intervene by several relatives of the deceased who argued the widow who was the administratix of the deceased's estate had "made known her hostilities toward any and all claims" made by the proposed intervenors.  Court reasoned that she had a duty and personal interest in getting maximum damages available in the §1983 action and, as such, she "adequately represented the proposed intervenors" in the §1983 claim and the relatives had no right to intervene under Rule 24(a).  *Id.*, supra, at *1, *2, *4].

Andre Chapman fully complied with his responsibilities as personal representative of the Estate of Darren Rainey as required by Florida law.  Fla. Stat. §768.20.  He was required to recover damages for all beneficiaries to be distributed to the survivors and the estate if any such damages were recovered.  *Funchess v. Gulf Stream Apartments of Broward County, Inc.*, 611 So.2d 43, 45 (Fla. 4th DCA 1992).   Joyce Anderson is not Darren Rainey's survivor.  Neither is the Estate of Daralyn Anderson a "survivor" because the Estate is not a person and acts only in a representative capacity.  Mr.

Chapman obtained an incredible settlement of $4,500,000 in January 2018.  He has breached no duties to anyone.

It was not Andre Chapman's or his attorney's obligation "to open an estate for Daralyn Anderson," or "to give Daralyn's estate an opportunity to participate."  Daralyn was dead when the action was filed.  **Daralyn's recovery in any potential wrongful death action was eviscerated by Fla. Stat. §768.24 once she died as discussed above.**

If Joyce Anderson had an ounce of interest in anything related to Darren Rainey's death—other than now trying to collect the *entire* wrongful death settlement money for herself—she had a duty to exercise due diligence and timely open an estate for her deceased daughter. Even after Mr. Wintter and Ms. Williams both contacted Joyce Anderson prior to the July 19 hearing to inform her about the hearing to approve the settlement, she did not want to be involved.  Now, miraculously, Joyce Anderson has a newly found interest in this lawsuit and is coincidentally represented by Commons' probate attorney Mr. Wintter.  Could this newly found interest be the result of someone dangling the $4,500,000 recovery for herself and her attorneys?  After failing to institute any lawsuit for Darren Rainey's death, and after allowing every statute of limitation period to expire, Anderson seeks to collect all the wrongful death damages in this case. To allow this to happen would be a perversion of Federal and State law governing wrongful death damages.

For the reasons stated above, this factor weighs in favor of denying the motion.

## B.   THE ESTATE OF DARALYN ANDERSON HAS NO RIGHT TO THE PROCEEDS OF THE LAWSUIT UNDER FLORIDA LAW NOR FEDERAL LAW

In the 3 ½ years of active litigation, Plaintiffs Andre Chapman and Renee Chapman established their right to wrongful death damages in the extensive discovery process spanning this time period.  Andre Chapman and Renee Chapman settled this case on behalf of the Estate of Darren Rainey and in their individual capacities as survivors and as proven blood siblings of Darren Rainey.  Nothing in the Florida Wrongful Death Act ("FWDA"), including Fla. Statute § 768.18(1), nor any other State or Federal case allows a third person who has no blood relation to the Decedent to recover wrongful death damages, yet this is precisely what Joyce Anderson is

seeking to do under the guise of the Estate of Daralyn Anderson, whose rights ended with her death.

Under both Florida and Federal law, wrongful death damages are subject to proof by individuals who are *blood* relatives of the Decedent who are ALIVE to testify to their loss from the death of their relative at the hands of wrongdoers.  Joyce Anderson, the sole survivor of Daralyn Anderson, and never married to Mr. Rainey, has no standing to assert, or entitlement to, wrongful death damages from Mr. Rainey's death.   The proposed intervenor points to no legal authority that would permit Joyce Anderson—with no established relationship with the Decedent Rainey and who at most gave birth to his illegitimate child some 28 years prior to his death—to have a right to wrongful death damages for his death.  The Anderson Intervention Motion cites *Estate of Gilliam ex. Rel. Waldroup v. City of Prattville*, 639 F.3d 1041 (11ᵗʰ Cir. 2011), however, this case certainly does not afford Anderson standing to recover wrongful death damages.  Neither does *Sharbaugh v. Beaudry*, 267 F.Supp.3d 1326 (N.D. Fla. 2017).  Plaintiffs' citation to *Heath v. City of Hialeah*, 560 F.Supp. 840 (S.D. Fla. 1983) in their Petition is an example of the broad authority in this district in §1983 cases.  In *Heath,* the court applied the federal common law of survivorship to allow the Decedent's *own mother* to recover Decedent's survival damages, because following the FWDA would have limited meaningful damages to Decedent's *own mother* for the shooting death of her son.

Plaintiffs Andre Chapman and Renee Chapman have suffered tremendous loss from the death of their brother.  In the 3 ½ years of litigation, the nature and extent of their relationship with Darren Rainey was delved into, starting with their childhood to the time Darren went into custody in February 2012, including their claims of loss of support and services. Plaintiffs Andre Chapman and Renee Chapman loved their brother Darren and will suffer from this loss for the rest of their lives.  The Court should not allow a mockery to be made of the significance of the loss to Andre Chapman and Renee Chapman who are the only ones who fought to vindicate Darren Rainey's rights and their own individual rights in this litigation.

## VI. <u>CONCLUSION</u>

For the reasons set forth above, and the moving party having failed to satisfy ALL four of the requirements for a motion to intervene, Plaintiffs respectfully request the Court to deny the intervention motion.


Dated:  September 5, 2018

By: */s/ Milton C. Grimes*
Milton C. Grimes, Esq.
**LAW OFFICES OF MILTON C. GRIMES, APC**
3774 W. 54th St.
Los Angeles, CA 90043
Phone: (323) 295-3023
Fax: (323) 295-3708
Email: miltgrim@aol.com
*Attorneys for Plaintiffs*
         – And –


By: */s/ Annette Newman*
Annette Newman, Esq., Fla. Bar No. 84537
**LAW OFFICE OF ANNETTE NEWMAN, LLC**
101 NE 3rd Ave., Ste. 1500
Ft. Lauderdale, FL 33301-1181
Telephone: (888) 333-5580
Email: annettenewmanesq@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 5, 2018 a true and correct copy of the OPPOSITION BY PLAINTIFF ANDRE CHAPMAN AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DARREN RAINEY TO "PERSONAL REPRESENTATIVE [Joyce Anderson's] MOTION TO INTERVENE REGARDING DETERMINATION AND ALLOCATION OF WRONGFUL DEATH DAMAGES" and all attachments has been filed with the Court utilizing its CM/ECF system, which will transmit a notice of electronic filing to all counsel or parties of record registered with the Court for that purpose.

Monica Stinson, Esq.
Senior Assistant Attorney General
Office of the Attorney General
The Capitol, Suite PL-01
Tallahassee, FL 32399-1050
Monica.Stinson@myfloridalegal.com
*Attorneys for Defendant FDOC*

Gregg A. Toomey, Esq.
THE TOOMEY LAW FIRM LLC
The Old Robb & Stucky Building
1625 Hendry Street, Suite 203
Fort Myers, FL 33901
Phone: (239) 337-1630
Fax: (239) 337-030
Email: GAT@thetoomeylawfirm.com
hms@thetoomeylawfirm.com
arl@thetoomeylawfirm.com
*Attorneys for Defendant Corizon, LLC*

Sheridan Weissenborn, Esq.
DUTTON LAW GROUP, PA
9700 S. Dixie Hwy., Suite 940
Miami, FL 33156
Phone: (786) 871-7971
Fax: (239) 337-030
Email:
sweissenborn@duttonlawgroup.com
nvallecillo@duttonlawgroup.com
*Attorneys for Defendant Jerry Cummings*

Lourdes Espino Wydler, Esq.
Oscar Marrero, Esq.
Alexandra C. Hayes, Esq.
MARRERO & WYDLER
Douglas Centre PH-4
2600 Douglas Rd.
Coral Gables, FL 33134
Phone: (305) 446-5528
Fax: (305) 446-0995
Email: lew@marrerolegal.com
oem@marrerolegal.com
ach@marrerolegal.com
*Attorneys for Defendants Roland Clarke and Cornelius Thompson*

John R. Sutton, Esq.
SUTTON LAW GROUP, P.A.
7721 SW 62nd Ave., First Floor

Max Price, Esq.
LAW OFFICE OF MAX R. PRICE, P.A.

South Miami, FL 33143
Phone: (905) 667-4481
Email: Info@SuttonLawGroup.com

6701 Sunset Drive, Suite 104
Miami, FL
Phone: (305) 662-2272
Email: mprice@pricelegal.com

Linda Bellomio Commons, Esq.
LAW OFFICE OF LINDA B.
COMMONS, P.A.
P.O. Box 340261
Tampa, FL 33694
Phone: (352) 610-4416
Email: lcommons@aol.com

Christopher Q. Wintter, Esq.
WINTTER & ASSOCIATES, P.A.
14 Rose Drive
Fort Lauderdale, Florida 33316
Phone: (954) 920-7014
Email: cqw@wintterlaw.com