United States District Court
for the
Southern District of Florida

| Andre Chapman, representative of Estate of Darren Rainey and others, Plaintiffs, | ) ) ) ) | |
|---|---|---|
| v. | ) ) ) ) | Consolidated Action Case No. 14-23323-Civ-Scola (Orig. Case No. 14-24140-Civ-Scola) |
| Florida Department of Corrections, Corizon, LLC, Roland Clarke, and Cornelius Thompson, Defendants | ) ) ) ) | |

## **Omnibus Order**

Andre Chapman, in his representative capacity, sued the Defendant prison, prison officials, and prison employees, under 42 U.S.C. § 1983, for the wrongful death of his brother, Darren Rainey, in 2012. After years of litigation, the mediator in this case notified the Court, on January 17, 2018, that this matter had settled in full. (Mediation Rep., ECF No. 241.) On that same day, the Court administratively closed the case and directed Chapman to file a stipulation of dismissal or a motion to dismiss. (Order, ECF No. 242.) Also on that same day, attorney Linda Commons, who had worked with Plaintiff's counsel at some point in this litigation, filed a notice of a charging lien. (Not. of Charging Lien, ECF No. 243.) This notice spawned ten months of legal wrangling—in this Court, the Eleventh Circuit, and the state probate court,—and the case, to this day, has yet to be dismissed.

Now pending before the Court are (1) Chapman's "Petition for Determination and Allocation of Wrongful Death Damages" (Pl.'s Pet., ECF No. 314); (2) a motion to intervene regarding that petition filed by the personal representative of the estate of Rainey's daughter[1] (Mot. to Intervene, ECF No. 318); and (3) Chapman's motion for the entry of an order authorizing the release of settlement proceeds to attorney John R. Sutton's trust account (Mot. for Release Auth., ECF No. 334). For the reasons that follow, the Court **denies** Chapman's petition for allocation (**ECF No. 314**); **denies** Anderson's motion to intervene (**ECF No. 318**); and **grants** Chapman's motion for an order authorizing the release of settlement funds (**ECF No. 334**).

---

[1] Rainey was survived by a daughter, Daralyn Anderson, who died eight months after he did. Long after this case was filed—in fact, after it had been settled—Joyce Anderson, Daralyn's mother, was appointed the personal representative of Daralyn's estate. Going forward, the Court will refer to the personal representative of Daralyn's estate as "Anderson."

## 1. Background

In attempting to facilitate the parties' settlement while Commons's charging lien issue was pending, the Court ordered the Defendants to release their respective shares of the settlement proceeds to the Sutton Law Group[2] Trust Account upon their receipt of an executed release from Chapman. (Order Re Settlement Distr., ECF No. 266, 1.) The Court further allowed that, "[o]nce the funds deposited in Mr. Sutton's trust fund have cleared, the Plaintiff may recover his share of the proceeds and cause it to be deposited into the designated estate depository." (*Id.*) At the same time, the Court required the remaining funds to stay put while the Court sorted out the issues raised by Commons's attempt to impose a charging lien (including her claim that Chapman's counsel was not entitled to any fees whatsoever). (*Id.*) The Court did not reserve any jurisdiction over the settlement fund amounts that were due to Chapman apart from any portion that was related to fees and costs.

The Court entered this order in February 2018. In April, the Court struck Commons's charging lien and ordered the parties to confer regarding "the resolution of Commons's entitlement to any of the fee amount retained in Sutton's trust account." (Order Granting Mot. to Strike, ECF No. 279, 4.) At this point the Court assumed, mistakenly, that any of the settlement funds that were not related to fees and costs had already been distributed. In any event, thereafter, the parties notified the Court that they were unable to reach an agreement regarding Commons's entitlement to fees. (Jt. Status Rep., ECF No. 281.) Additionally, unhappy with the Court's striking of her lien and, apparently, the parties' inability to otherwise reach an agreement regarding amounts Commons claimed entitlement to, Commons then filed a motion for reconsideration of the Court's order. (Commons's Mot. for Reconsid'n, ECF No. 282.) In denying this motion, the Court also ordered the parties to show cause why the Court should continue to be involved with sorting out the distribution of the settlement funds in this case.

It was not until May 9, 2018, upon notice from Defendant Corizon, LLC, that any of the parties bothered to alert the Court that Chapman had yet to execute the releases and that, as a result, no settlement funds had been tendered. According to Corizon, Chapman's attorneys advised they were seeking approval from the probate court for Chapman to execute the releases. Upon receipt of Corizon's notice, the Court set the matter for a status conference. At the status conference, attorney Sutton advised the Court that

---

[2] Attorney John R. Sutton filed a notice of appearance on behalf of Chapman's counsel, Milton C. Grimes and his law offices, in response to the issues relating to Commons's claims. (Not. of Appearance, ECF No. 256.)

not only was the requirement that funds be deposited into his account "probably unnecessary," it was also "perhaps incorrect." (Hr'g Tr. 5:7–9, ECF No. 306, 5.) According to Sutton, Chapman had filed a motion for approval of the settlement with the probate court and the parties could make use of a restricted depository rather than his trust account.

Immediately thereafter, the Court vacated that part of its earlier order directing the Defendants to pay the settlement proceeds into Sutton's trust account. (Order on Settlement Issues, ECF No. 298.) "In sum, the Court relinquishe[d] the jurisdiction it retained with respect to the finalization of the distribution of settlement funds in this case." (*Id.* at 2.) The Court then ordered the parties to file their dismissal paperwork on or before July 23, 2018. Commons then, on the same day, filed a notice of appeal of the Court's order striking her charging lien. (Not. of Appeal, ECF No. 300.)

In the meantime the probate court approved the settlement, to an extent, and "authorized Andre Chapman as personal representative of the Estate of Darren Rainey to sign documents related to approval of the settlement." (Pl.'s Mot. for Ext., ECF No. 307.) At the same time, the probate court also ordered Chapman to "file in federal court a petition for determination of heirs because the probate court deemed the settlement to be for wrongful death and, therefore, NOT an [e]state asset." (*Id.* at 2 (capitalization in original).) As a result, Chapman sought an extension of fifteen days within which to submit his dismissal paperwork. (*Id.*)

Chapman then filed his "Petition for Determination and Allocation of Wrongful Death Damages," certifying that the requested relief was opposed by the Defendants as well as attorney Christopher Wintter who claimed to represent the personal representative of Rainey's daughter's estate. (ECF No. 314, 2). At the time the Defendants filed their opposition, they expressed, among other issues, their concern that the Court likely lacked jurisdiction over the settlement proceeds while Commons's appeal was pending. (Def.'s Opp., ECF No. 315 (joined by all Defendants (ECF Nos. 316, 317).) The Court joined the Defendants in this concern. But Commons has now voluntarily dismissed that appeal. And the Court has now reviewed the motion. The Court has also now reviewed Anderson's motion to intervene "regarding determination and allocation of wrongful death damages" (ECF No. 318) as well as Chapman's motion for an order authorizing the release of the settlement proceeds (ECF No. 334).

### 2. Discussion

The complaint in this case is based on federal law, alleging various violations of Rainey's rights under 42 U.S.C. § 1983—violations that resulted

in his death. The claims allege disability discrimination under the Americans with Disabilities Act and violations of the Eighth and Fourteenth Amendments of the Constitution. The parties to this action have settled the controversy between them. Despite this settlement, Chapman has filed a petition asking the Court to make a determination of Rainey's heirs and to allocate "wrongful[-]death damages." Anderson, on behalf of her daughter's estate, seeks to intervene in that determination.

Chapman does not identify what specific legal authority requires, or even allows, the Court to make the determination he is asking the Court to make. Instead, he points to the probate court judge's having "directed [him] to file 'a determination of heirs' in [f]ederal [c]ourt." (Pl.'s Pet. at 3.) Chapman also sets forth the framework, under § 1988, that "establishes a three-step formula for the selection of the appropriate substantive law in civil rights cases." (*Id.* at 5.) But he does not explain why, in light of the parties' settlement, the Court must even go through this analysis. Rather, his concern is centered on his preemptive argument that Anderson, or her daughter's estate, is *not* entitled to any portion of the settlement.

Nor does Anderson, in her motion to intervene in the Court's determination of Chapman's petition, provide support for the Court's involvement in determining the heirs in this case. Instead, even Anderson describes Chapman's efforts as "improperly asking this Court to adjudicate that Andre and Renee Chapman are the sole persons entitled to the proceeds generated by th[is] lawsuit." (Anderson's Mot. at ¶ 5.)

The probate court's labeling of the proceeds of the settlement in this case as "the proceeds of a wrongful death settlement," does not compel a different result. (Probate Court's Order Approving Wrongful Death Settlement, ECF No. 318-3, 2.) Neither party argues that the probate court's summary characterization of the settlement proceeds is any way binding on this Court or requires this Court to apply any of the provisions of Florida's Wrongful Death Act to the handling of the settlement proceeds in this case. For her part, Anderson claims her daughter's estate is entitled to intervene because the estate "has a right to the proceeds generated by th[is] lawsuit." (Anderson's Mot. at 6.) This right, Anderson explains, stems from Daralyn's status as "Rainey's sole 'survivor' under Florida's Wrongful Death Act"; Daralyn's status as "Rainey's sole intestate heir under the Florida Probate Code"; and "Daralyn's right to Darren Rainey's intestate property vest[ing] on the date of Rainey's death." (*Id.*)

In urging the Court to look to Florida's Wrongful Death Act to support Daralyn's rights to the settlement proceeds, Anderson points to § 1988 which she claims "*requires* application of state survivorship law." (*Id.* (emphasis

supplied).) This is so, she says, because § 1983 "is silent or 'deficient'" in "provid[ing] for the survival of a civil rights action in favor of another upon the death of the injured party." (*Id.*) But whether or not § 1983 is deficient in affording relief in this case is not at issue: a mediation here resulted in the settlement "of all claims." (Med. Rep., ECF No. 241, 1.) Neither party, then, has presented any reason why the Court must resort to Florida law to effectuate the purposes of § 1983 in this particular case. Because none of the parties in *this* case argue that the civil rights statutes are "unsuited or insufficient to furnish suitable remedies," *Robertson v. Wegmann*, 436 U.S. 584, 588 (1978) (quotations and citations omitted), there is no reason to look to state law to fill any gaps in the relief afforded by § 1983. The Court finds nothing in §§ 1983 or 1988 that requires the Court to apply Florida law to determine how to divide the proceeds of a personal representative's § 1983 case that has settled.

Perhaps if Anderson were to seek her own relief against the Defendants, her claim that "there is no question that § 1983 is 'deficient'" and that therefore "§ 1988 directs that this gap be filled by Florida law," would apply. It is also possible, however, that, upon analysis, a Court might determine that application of Florida law in that context would be "inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988(a). And thus "state law [would] be disregarded in favor of the federal common law." *Heath v. City of Hialeah*, 560 F. Supp. 840, 841 (S.D. Fla. 1983). In any event, here, where Anderson is not seeking her own relief against the Defendants, but merely trying to lay claim to a settlement between other parties, the parties have presented no discernable basis supporting the application of Florida law.

Lastly, Anderson's claim that "[e]ach of the counts in Plaintiff Chapman's Second Amended Complaint seek[s] damages on behalf of the 'Estate of Darren Rainey' based upon the damages scheme set forth in the Wrongful Death Act," is without merit. Nothing in the complaint mentions the Wrongful Death Act or even Florida law. (Anderson's Resp. to Pl.'s Pet., ECF No. 322, 12.)

### A. Intervention

Anderson seeks to intervene as a matter of right under Federal Rules of Civil Procedure 24(a)(2). Among other things, a party seeking to intervene under this rule must establish that "[s]he has an interest relating to the property or transaction which is the subject of the action." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). Anderson's claim that Daralyn's estate has a right to the proceeds of the settlement is based on her contention that Florida's Wrongful Death Act and Florida's Probate Code

should be applied to the Court's evaluation of this case. As set forth above, neither party has established this to be the case. Again, there is no continuing § 1983 controversy before the Court—the case has been settled by the parties to this action and administratively closed. There is thus no reason for the Court to look to § 1988 "to fully carry the civil rights statutes into effect," *Sharbaugh v. Beaudry*, 267 F. Supp. 3d 1326, 1330 (N.D. Fla. 2017), and therefore no reason to apply Florida law. Other than this hook, Anderson has not proffered any other basis upon which the Court could find she has an interest, under Rule 24(a)(2), that would require the Court to allow her intervention. On this basis alone, the Court denies Anderson's motion to intervene (ECF No. 318) and will not consider her opposition in evaluating Chapman's petition.

### B. Chapman's Petition

According to Chapman, the probate court has authorized and directed him to sign the required releases related to the settlement of this case. At the same time, the probate court's approval of "the global gross settlement of $4,500,000" was made "contingent upon this [Court's] approval of this settlement." Again, the Court does not find anything ripe for its approval: if the parties' settlement agreement requires Chapman to execute a release in exchange for the Defendants' releasing the settlement funds and if the probate court has directed Chapman to sign the release, then *Chapman should sign the release* and the *Defendants should thereafter release the proceeds of the settlement.* Anderson is not a party to this case and the Court has denied her request to intervene. The Court has stricken Commons's charging lien and she is not a party to this case either. Because the actual parties in this case have settled their dispute, there is no occasion for the Court to apply state law to fill in any gaps left by § 1983—the Plaintiff appears to have been afforded adequate relief without relying on the Court's analysis in that regard. And no one is complaining about the adequacy of the settlement amount itself. The Court simply does not consider the settlement of *this case* to be a settlement of a wrongful-death claim under Florida law. Therefore, court approval under Florida's Wrongful Death Act is not implicated or warranted.

To the extent the probate court's approval of the settlement in this case was contingent on any order issuing from this Court, that contingency should be removed. All parties in this matter have been represented by competent counsel and the mediation that resulted in settlement was presided over by an experienced and well regarded member of the Florida Bar. No one who is actually a party to this case has objected to any of the terms of the settlement. If either party refuses to consummate the settlement in this case, a motion to

enforce the settlement agreement can be filed at which point its terms might then be tested. Short of that, though, there is simply no reason for the parties in this case not to comply with their respective obligations under their agreement. The matters before *this* Court do not warrant a determination of heirs; if the probate court finds it must make such a determination itself, for its own purposes, that is a separate issue. But that issue, whatever it is, should not delay the Defendants from tendering the proceeds of this settlement and finally ending their further involvement in this case.

Corizon, in its response to Chapman's petition, raises theoretical concerns, prompted by Anderson, Commons, and Wintter's involvement in this case, that Chapman might never have had the authority, as the personal representative of Rainey's estate, to litigate and settle this case. Corizon is also concerned that Anderson might move to set aside the settlement. While parties and counsel are always free to raise objections, file motions, or execute any other legal maneuver, Rule 11 under the Federal Rules of Civil Procedure serves as a mechanism to protect parties from improper, frivolous, or unsupported filings. While this may not be the "bulletproof order" (Corizon's Resp., ECF No. 315, 6.) Corizon was hoping for, between the passing of the limitations period, the Court's denial of Anderson's motion to intervene, and whatever rights and obligations are afforded under the parties' settlement agreement, this should be enough.

The Court also finds Chapman's request that the Court approve his attorneys' claims for fees and costs to be improper. If counsel and his client are in agreement about the division of the proceeds, this Court does not perceive, on the record before it, any impediment to such a distribution. Further, since Commons has dismissed her appeal of the Court's order striking her charging lien, the Defendants' tendering of the settlement proceeds should no longer be delayed on that basis.

### C. Release of Settlement Proceeds

Lastly, Chapman seeks an order authorizing the Defendants to release the settlement proceeds to the Sutton Law Group, P.A. Trust Account. None of the Defendants oppose this request. Chapman advises that Anderson, on behalf of her daughter's estate, intends to oppose this motion and that Commons also objects to the motion. Neither is a party to this case. Therefore, upon what the Court construes as the parties' joint motion, the Court orders the Defendants to comply with the parties' settlement agreement by delivering their respective portions of the gross settlement amount to the Sutton Law Group, P.A., Trust Account on or before **November 26, 2018**.

### 3. Conclusion

As set forth above, the Court finds that neither the Plaintiff nor Anderson has persuaded the Court that Florida law should be applied to a determination of the distribution of the settlement proceeds in this case. The Court thus has no occasion to either allocate the funds or to approve the settlement itself. The Court thus **denies** Chapman's petition (**ECF No. 314**). Additionally, Anderson's motion to intervene was premised on her theory that Florida law applied to the distribution of the settlement funds here. Since she has not established that the Court must apply Florida law, she has also not established an interest that would support her motion to intervene. The Court therefore also **denies** Anderson's motion to intervene (**ECF No. 318**). Finally, the parties have jointly asked for an order directing the Defendants to tender their portions of the settlement amount. As indicated above, the Court **grants** this motion (**ECF No. 334**).

Lastly, the Court orders the Plaintiff to file his dismissal paperwork on or before **November 30, 2018**.

**Done and ordered** at Miami, Florida, on October 26, 2018.

_____
Robert N. Scola, Jr.
United States District Judge